# EXHIBIT 1

## Case Information

# Mark Gugliuzza on behalf of Himself and all others similarly situated vs Morgan and Morgan, Jacksonville, PLLC d/b/a Morgan and Morgan, Jacksonville, LLC and Seth Diamond

SPCV25-00202-MI

Location
Chatham County - Superior Court

Case Category
Civil

Case Type
Tort - Legal Malpractice

Case Filed Date
2/11/2025

Judge
Middleton, Christopher K.

Case Status
Open (Open)

## Parties [3]

| Type | Name | Nickname/Alias | Attorneys |
|---|---|---|---|
| Plaintiff/Petitioner | Mark Gugliuzza | | Brent J. Savage, Mark Andrew Tate |
| Defendant/Respondant | Morgan & Morgan Jacksonville, PLLC d/b/a Morgan & Morgan Jacksonville, LLC | | Pro Se |
| Defendant/Respondant | Seth Diamond | | Pro Se |

## Events [8]

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 2/11/2025 | Filing | Summons | Seth Diamond | Summons - Seth Diamond.pdf |
| 2/11/2025 | Filing | Complaint - Filed | | COMPLAINT - COMBINED WITH EXHIBITS - FOR FILING.pdf |
| 2/11/2025 | Filing | Case - Filing Form | | Civil Cover Sheet - FOR FILING.pdf |
| 2/11/2025 | Filing | Certification - Under Rule 3.2 | 3.2 cert | 3.2 Certification - FOR FILING.pdf |
| 2/11/2025 | Filing | Summons | Morgan and Morgan Jacksonville, PLLC | Summons - Morgan & Morgan Jax.pdf |
| 2/12/2025 | Filing | Request - | First Request for Production of Documents to Defendants | Plf 1st RFP to Defs - FOR FILING.pdf |
| 2/12/2025 | Filing | Interrogatories Filed | First Interrogatories to Defendants | Plf 1st Rog to Defs - FOR FILING.pdf |
| 3/3/2025 | Filing | Sheriff's Entry Of Service | Corporate Service February 28, 2025 on Morgan & Morgan via Lisa, Assistant | Executed SROS- M&M.pdf |

© 2025 Tyler Technologies, Inc. | All Rights Reserved
Version: 2024.9.0.585



## IN THE SUPERIOR COURT OF CHATHAM COUNTY

## STATE OF GEORGIA

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 2/11/2025 3:54 PM
Reviewer: KW

MARK GUGLIUZZA, on behalf of

Himself and all other similarly situated
_____

_____
                           PLAINTIFF

VS.

MORGAN & MORGAN, JACKSONVILLE, PLLC d/b/a
_____

MORGAN & MORGAN JACKSONVILLE, LLC, and
_____

**SETH DIAMOND**
_____
                           DEFENDANT

CIVIL ACTION
NUMBER _____

SPCV25-00202-MI

### SUMMONS

TO THE ABOVE NAMED DEFENDANT: SETH DIAMOND

       You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney whose name and address is: Brent J. Savage, Esq.
                                         SAVAGE, TURNER, PINCKNEY, SAVAGE & SPROUSE
                                         102 E. Liberty Street, 8th Floor
                                         Savannah, GA 31401

an answer to the complaint which is herewith served upon you, within 30 days after service of summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

This_____11_____ day of _____February_____, ____2025____.

                                      TAMMIE MOSLEY
                                      Clerk of Superior Court
                                      CHATHAM COUNTY

                                      By_____
                                              Deputy Clerk

**Instructions:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.
SC-1 Rev 04

# IN CHATHAM SUPERIOR COURT

_____ TERM _____

_____

_____

_____

VS.

_____

_____

## ORIGINAL

Filed in the Clerk's Office this \_\_\_\_\_11_____

day of \_\_\_\_\_February_____, \_\_\_2025\_\_\_\_

_____
Clerk, Dep. Clerk, S. C. C. GA

_____
PLAINTIFF'S ATTORNEY

SPCV25-00202-MI

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 2/11/2025 3:54 PM
Reviewer: KW

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| MARK GUGLIUZZA on behalf of Himself and all others similarly situated | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| MORGAN & MORGAN, JACKSONVILLE, PLLC d/b/a MORGAN & MORGAN, JACKSONVILLE, LLC and SETH DIAMOND, | ) ) ) ) ) |
| Defendants. | ) ) ) |

CIVIL ACTION NO. _SPCV25-00202-MI_

---

## COMPLAINT

COMES NOW Mark Gugliuzza, Plaintiff in the above-styled action, and file this complaint against Defendant Morgan & Morgan, Jacksonville, PLLC d/b/a Morgan & Morgan, Jacksonville, LLC (hereinafter "Morgan & Morgan") and Seth Diamond showing this Honorable Court the following:

### I. Parties, Jurisdiction, and Venue

1.  Plaintiff Mark Gugliuzza is a resident and citizen of Savannah, Chatham County, Georgia. Plaintiff brings this action on behalf of himself and all others similarly situated in being improperly charged expenses/interest by Defendant Morgan & Morgan Jacksonville, PLLC d/b/a Morgan & Morgan Jacksonville, LLC ("Morgan & Morgan").

2.  Defendant Morgan & Morgan is a Foreign Limited Liability Company registered to do business in the State of Georgia and carrying out business in Chatham County, Georgia.

-1-

Morgan & Morgan can be served through its registered agent, Registered Agent

Solutions, Inc., at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

3.    Defendant Seth Diamond is a resident and citizen of Savannah, Chatham County, Georgia.

He may be served with process at 18 Ralston's Way, Savannah, GA, 31406.

4.    The actions complained of in this Complaint took place in Chatham County, Georgia.

There is no complete diversity of citizenship between the Plaintiff and Defendants.

5.    Jurisdiction and venue are proper in this Court.

## II. Factual Allegations

6.    Plaintiffs re-allege and incorporate herein each and every allegation of all preceding

paragraphs as if fully restated.

7.    Plaintiff was injured in a traffic wreck on January 17, 2021.  This occurred when a truck

driven by Jason Lyberger hit numerous vehicles on 37th Street in Savannah. One of those

vehicles was an Acura MDX occupied by the Plaintiff.

8.    As a result of the wreck, Mr. Gugliuzza suffered a severe back injury.  Mr. Gugliuzza's

injuries already necessitated one surgical procedure, and upon information and belief, he

will require future medical services.

9.    As a result of the advertising he saw in regard to Morgan and Morgan, and, after

consulting his wife and father-in-law, he made a decision to employ Morgan and Morgan.

He employed them as his lawyers on January 18, 2021 (a copy of his employment

agreement is attached as Exhibit "A").

10.   Mr. Gugliuzza's case was filed in the State Court of Chatham County and removed to the

United States District Court for the Southern District of Georgia.  Initially, Morgan and

Morgan demanded $5,000,000.00 for his case on his behalf.

11.    The underlying lawsuit remained pending for three (3) years, and during this time, two

mediations took place.  Morgan & Morgan's offers to settle remained in the millions of

dollars.

12.    During this representation, Morgan and Morgan suggested Mark and his wife meet by

telephone with a "life care planner".  Mr. Gugliuzza was not entirely sure why this was

done.  However, he believed, at that point, it was important since Morgan and Morgan

suggested it.  He never saw a report compiled by this life care planner.  He was not asked

to visit with a physician to substantiate any life care plan.

13.    In late 2024, in retrospect seemingly due to Morgan & Morgan's malpractice, Mark

Gugliuzza was told he now needed to settle his claim for $125,000.00.  This was multiples

less than he had ever been informed he should accept for the injuries he suffered in the

wreck of January 17, 2021.  Mr. Gugliuzza was informed this settlement was necessitated

because a federal judge involved in his case had made a clear error in knocking his life care

plan.  He was never properly informed.  In addition to this act of clear legal malpractice,

Morgan & Morgan failed to adequately disclose medical experts, their opinions, and

reports.  This resulted in the inability to present medical testimony at trial concerning

substantial future damages and medical treatment.  At no time did Morgan and Morgan

admit to Mark Gugliuzza it had committed legal malpractice by not having a medical

doctor substantiate the life care plan or adequately disclosing medical experts and their

opinions concerning future damages and required treatment.

14.    Based upon this advice of Morgan and Morgan counsel Seth Diamond, Mr. Gugliuzza

begrudgingly agreed to accept the $125,000.00 settlement.

15.     Plaintiff then was presented with a settlement statement (Exhibit "B").  This settlement

statement improperly recouped to Morgan and Morgan numerous charges not properly

recoverable by it or excessive.  These included:

a.      interest on expenses advanced;

b.      investigative services costs;

c.      "trial presentation"

d.      process service

e.      the life care plan;

f.      "professional service"; and

g.      retained experts, to the extent they dealt with life care planning which was

16.     Morgan and Morgan committed clear malpractice by getting a life care plan done and then

failing to have an appropriate physician review and validate the plan.  This caused the plan

to be disqualified by the United States District Court for the Southern District of Georgia

(See Affidavit of Kenneth Futch, attached hereto as Exhibit "C"; see also relevant portions

of the Court order on point, attached as Exhibit "D").

17.     The failure to validate the life care plan and the failure to adequately disclose medical

experts, their opinions, and reports constitutes an actionable cause of action for legal

malpractice in that it deviates from the standard of lawyers in Georgia (See Exhibit "C").

### *III: Class Action Allegations*

18.     Plaintiff re-alleges and incorporates each and every allegation contained in the preceding

paragraphs as if fully restated herein.

19.    Plaintiff seeks to bring this case, in part, as a class action under O.C.G.A. § 9-11-23 on

behalf of himself and the following class:

All Georgia citizens who:

    a.    Entered into a contract for employment in Georgia with Defendant Morgan & Morgan or any of its agents, employees, contractors, etc., including Defendant Diamond;

    b.    Were represented by Defendant Morgan & Morgan or any of its agents, employees, contractors, etc., including Defendant Diamond, in litigation and/or pre-litigation processes, including but not limited to settlement discussions;

    c.    Had their case(s) resolved prior to or on the date of this Class's certification; provided such resolution did not occur beyond four (4) years prior; and

    d.    Paid Defendant Morgan & Morgan or any of its agents, employees, contractors, etc., including Defendant Diamond, costs, expenses, and/or interest not properly identified pursuant to Georgia law and the applicable standard of care imposed on Georgia attorney's/law firms (supra).

20.    The members of the Class are so numerous that joinder of all of them is impracticable. Members are widely dispersed throughout Georgia.  Plaintiff, on information and belief, understands that there are hundreds, if not thousands, of members of the proposed Class. While the exact size of the proposed class is not fully known to Plaintiff at this time, it can be obtained from Defendants' records.  O.C.G.A. § 9-11-23(a)(1).

21.     Defendants treated all similarly situated clients the same way they treated Plaintiff.  These Defendants failed to properly identify the maximum rate of interest they would charge in the representation agreements entered into with their clients, failed to identify what rate was actually charged and to which advances it was applied, inflated their costs and/or expenses in presenting closing statements to their clients, included duplicative charges and expenses in closing statements presented to their clients, and otherwise failed to clearly identify what was being charged to clients following the resolution of their cases.  All of this conduct constitutes actionable malpractice, professional negligence, and/or breach of fiduciary duties that have caused harm to Plaintiff and Class Members as outlined in Mr. Futch's Affidavit, made pursuant to O.C.G.A. § 9-11-9.1. (See Exhibit "C").

22.     These Class claims arise from the same practices, procedures, and actions, and are based on the same legal theories as those of Plaintiff.  As a result, Plaintiff's contentions are common to those of the Class, and capable of class-wide resolution.

23.     Questions of law and/or fact common to all members of the Class, include, *inter alia*:

(a)     whether Defendants properly identified the maximum rate of interest they would charge clients for advanced expenses of litigation;

(b)     whether Defendants clearly identified what rate of interest was charged to each and every client and to what advances such interest was charged;

(c)     whether Defendants adequately identified all charges, expenses, and costs charged to their clients following the resolution of their case;

(d)     whether Defendants purported litigation costs and expenses charged to clients (and identified in closing statements) were inflated, duplicative, and/or excessive;

-6-

(e)     whether, as a result of Defendants' conduct, Plaintiff and the Class are entitled to an award of compensatory damages; and

(f)     whether, as a result of Defendants' conduct, Plaintiff and the Class are entitled to an award of punitive damages.

24.     These common questions will generate common answers apt to drive the resolution of litigation.  In fact, when these common questions are resolved as to Plaintiff, they will be resolved as to all Class members.  O.C.G.A. § 9-11-23(a)(2).

25.     The claim of the Plaintiff is typical to the claims of the class.  Plaintiff has claims against Defendants for the unlawful conduct and practices described herein.  His claims have the same essential characteristics as the claims of the Class as a whole, arise from the same courses of conduct, and are based on identical legal and remedial theories.  O.C.G.A. § 9-11-23(a)(3).

26.     Plaintiff will fairly and adequately assert and protect the interest of the Class.  He has no conflict with Class Members and seeks the same relief.  Plaintiff has retained competent counsel, experienced in the prosecution and successful resolution of class actions. O.C.G.A. § 9-11-23(a)(4). (Savage & Turner, P.C.; Tate Law Group, LLC).

27.     Furthermore, this suit is maintainable as a class action pursuant to O.C.G.A. § 9-11-23(b)(3).  The common questions of law and fact herein predominate over any questions affecting only individual members.  Additionally, a class action is superior to all other methods available for the fair and efficient adjudication of this controversy.

28.     By prevailing on his own claims, Plaintiff will necessarily establish Defendants' liability on the claims of all members of the Class.  Furthermore, damages will be determined by using

-7-

a common calculation methodology.

29.   While aggregate damages sustained by the Class are expected to be large, the damages suffered by specific individual Class members may be small relative to the complexity of litigation.  As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for every Class Member to separately seek redress.

30.   Even if Class Members themselves could afford such individual litigation, the court system could not.  Given the scope of legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  By contrast, a class action presents few if any management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.  Existing issues can be resolved by a single jury in a fair and efficient manner.  O.C.G.A. § 9-11-23(b)(3).

31.   Lastly, the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.  Adjudications with respect to individual Class Members would be, as a practical matter, dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and impede their ability to protect their interests.  O.C.G.A. § 9-11-23(b)(1).

*IV: Causes of Action*

*Count I: Professional Negligence*

32.    Plaintiff re-alleges and incorporates herein each and every allegation of all proceeding paragraphs as if fully restated herein.

33.    At all times relevant herein, Defendants were practicing law in Georgia.

34.    Defendants held themselves out to the public generally, and to the Plaintiff specifically, as being competent to provide legal advice and representation.

35.    As such, Defendants are charged with having a duty to exercise a reasonable degree of care and skill.

36.    Defendants breached their duty to exercise a reasonable degree of skill by failing to properly identify the maximum rate of interest they would charge in the representation agreements entered into with their clients, failing to identify what rate was actually charged and to which advances it was applied, inflated their costs and/or expenses in presenting closing statements to their clients, including duplicative charges and expenses in closing statements presented to their clients, and otherwise failing to clearly identify what was being charged to clients following the resolution of their cases.

37.    This conduct constitutes actionable malpractice and professional as it has caused harm to Plaintiff and Class Members.

38.    Pursuant to O.C.G.A. § 9-11-9.1, Plaintiff has attached the affidavit of Mr. Kenneth Futch, outlining multiple negligent acts and omissions of Defendants. (See Exhibit "C").

39.    Defendants failed to adhere to the standard of care generally employed in the legal profession under similar conditions and like circumstances by failing to legally represent Plaintiff's and Class Members' interest and provide them with reasonable/adequate compensation, properly identify all charges, costs, and expenses charged, clearly and

honestly outline their fee (including all forms of compensation and recoupment), and otherwise collect a fair fee.

40.    These actions and failures to act constitute professional negligence and have caused harm to Plaintiff and Class Members. (<u>See</u> Exhibit "C").

41.    As a result of Defendants' breach of the standard of care, Plaintiff and the putative Class has suffered substantial damages and harm.

### *Count II: Breach of Fiduciary Duty*

42.    Plaintiff re-alleges and incorporates herein each and every allegation of all preceding paragraphs as if fully restated.

43.    Defendants owed their clients, including Plaintiff and Class Members, a fiduciary duty at all times material hereto.

44.    Defendants breached their fiduciary duties owed to Plaintiff and the members of the putative class by failing to properly identify the maximum rate of interest they would charge in the representation agreements entered into with their clients, failing to identify what rate was actually charged and to which advances it was applied, inflated their costs and/or expenses in presenting closing statements to their clients, including duplicative charges and expenses in closing statements presented to their clients, and otherwise failing to clearly identify what was being charged to clients following the resolution of their cases.

45.    Plaintiff and Class Members were damaged and suffered injuries as a result of Defendants' breaches.

46.    As a result, of Plaintiff and Class Members suffered injuries and damages for which they

are entitled to recover.

### *V: Damages*

47.    Plaintiffs re-allege and incorporate herein each and every allegation of all preceding

paragraphs as if fully restated.

48.    Plaintiff is entitled to damages for the differences between the value of his case, had it

been properly handled, vs. the $125,000.00 accepted from Swift Transportation.

49.    Upon information and belief, Class Members likewise had the recovery net to them of their

cases diminished by Defendants' representation as well as the inflated/duplicative costs,

expenses, and interest charged to them upon the resolution of their cases.

50.    Plaintiff and Class Members are entitled to a refund of the amounts they were overcharged

for expenses in their cases, plus interest thereon.  In addition, since there was no right for

the recovery of these amounts, exemplary damages and attorneys fees pursuant to

O.C.G.A. §13-6-11 should be awarded.

### *VI. Prayer for Relief*

**WHEREFORE**, Plaintiffs pray:

A.    For summons and process to be issued and served upon Defendants;

B.    For actual and general damages in any amount of not less than $2,000,000.00.

C.    For exemplary damages;

D.    For trial by jury;

E.    For attorney's fees and all costs of this litigation pursuant to O.C.G.A. §13-6-11;

and

F.    For such other and further relief as this Court deems just and proper.

-11-

Respectfully submitted this 10th day of February, 2025

/s/ Mark A. Tate
Mark A. Tate
Georgia Bar No. 698820

**Tate Law Group, LLC**
25 Bull Street, Suite 200
Savannah, GA 31401
912-234-3030
912-234-9700 (fax)
twells@tatelawgroup.com
mmcnally@tatelawgroup.com

/s/ Brent J. Savage
Brent J. Savage
Georgia Bar No. 627450

**SAVAGE, TURNER, PINCKNEY,
SAVAGE, & SPROUSE**
Post Office Box 10600
Savannah, Georgia 31412
(912) 231-1140
lhatcher@savagelawfirm.net

-12-

# MORGAN & MORGAN

## <u>AUTHORITY TO REPRESENT</u>

I, the undersigned client, hereby jointly retain MORGAN & MORGAN JACKSONVILLE, PLLC, ("The Firm") as my attorneys to represent me in my meritorious claim against <u>Swift Transportation Co. of Arizona, LLC and Jason Lyberger</u>
or any other person, firm or corporation liable therefore, resulting from an incident that occurred on or about <u>1/17/2021</u>.

I agree to pay to my attorneys the following fee from the total gross recovery:

(a)     40% of any amount recovered on my behalf;
(b)     5% of any recovery, if an appeal or any post-judgment collection procedures are necessary. Such 5% is in addition to the fee stated above;
(c)     In the event that your claim, or any portion thereof, is brought against a defendant or defendants whose liability is governed pursuant to the Federal Tort Claims Act, 28 U.S.C.A. 1346, attorneys' fees are limited to 25% of the total gross recovery as to those defendants;
(d)     In the event attorneys' fees are recovered from any adverse party pursuant to any state or federal statute, the attorneys' fee shall be the greater of the court awarded fee or contingency fee stated above.

In the event that a "structured settlement" or periodic payment agreement is reached, I agree that the attorneys' fee shall be computed on the basis of the present value of the structured settlement at the time of the settlement. In determining the present value of the structured settlement, the parties agree to rely upon appropriate accounting methods for determining present value as set forth by actuaries, economists or other experts in the field. Any expense of determining present value shall be considered a cost for the case for which I agree to bear the expense in the event of a recovery. Further, the attorneys' fees, computed on the basis of "present value," are due and payable at the time of any settlement.

I understand that this is a contingent fee contract. **If there is no recovery, there will be no fee owed under the terms of this Authority To Represent**.

I understand that my attorneys may advance court costs and expenses of litigation, the repayment of which is contingent on a recovery unless ordered otherwise by a court of law. I understand that the attorneys will not advance the medical costs for the care and treatment of the injuries sustained as a result of the incident listed above as medical expenses remain at all times my sole responsibility.

I acknowledge that MORGAN & MORGAN will advance the costs of bringing this claim or lawsuit, and that these costs will be deducted from my share of the recovery after the contingent fee has been calculated. I understand and agree that I am only obligated to pay the costs if there is a recovery in this case. Costs shall include, but are not limited to, cash and non-cash expenditures for investigator mileage to and from the initial sign up meeting, court filing fees, medical records



MMPI_SAV_V11142018

charges, mediation fees, subpoenas and deposition costs, witness fees, long distance telephone calls, facsimiles, photocopies, postage, in-house printing, travel, parking, investigative services and all other costs necessary for proper performance of legal services, and that such advance costs shall bear interest at rate consistent with the State Bar of Georgia Rules of Professional Conduct. In the event that the Firm withdraws from the case, the Firm reserves the right to be reimbursed for any costs expended if a recovery is made by another Firm.

In the event that a settlement, verdict or judgment includes non- monetary aspects (e.g., restraining orders, injunctions, employment reinstatement) that cannot be readily valued with respect to the agreed upon contingent fee, then I agree to attempt to reach an agreement with the attorneys to value these non-monetary aspects for purposes of determining how the attorneys will be compensated for obtaining that relief for me.

I further agree that should the attorneys and I not be able to agree on any non-monetary aspects of a settlement verdict or award, the attorneys will not be precluded from obtaining, and realizing, their fees on the monetary aspects of the settlement, verdict or award.

Upon receipt by settlement or verdict of any proceeds, the said funds shall be disbursed as follows: First, from the gross proceeds the attorney fee percentage shall be computed and deducted; next, all costs for investigation and prosecution of the case including any and all filing fees, investigation fees, expert witness fees, and other like and similar costs shall be deducted; next, any unpaid medical, hospital, pharmacy, insurance reimbursement or like and similar costs shall be deducted. The resulting sum shall be net proceeds payable to client.

If all or part of the prior costs have been paid by another source (e.g., insurance or medical coverage), I agree that such source will be reimbursed out of any such proceeds if required by law, policy or agreement. The attorneys have the authority and authorization to make such disbursements of those funds directly to the doctors, hospitals or other persons concerned as is necessary.

The attorneys are hereby authorized to fully investigate the claims I may have stemming from the above-referenced incident. If the attorneys decide it is in my best interest to file a lawsuit or other legal proceedings on my behalf, the attorneys have my authority to prepare and prosecute such claims. If at any time the attorneys decline to investigate or prosecute my claims further, they shall so notify me in a timely fashion and, consistent with applicable ethical rules and obligations, may withdraw from representation under this agreement.

I further agree that the attorneys shall have a lien upon all monies, things or value and other consideration recovered in any claim they prosecute on my behalf.

It is understood and agreed that if either party receives a settlement offer, it will be immediately forwarded to the other.

It is further agreed that if the attorneys negotiate and recommend acceptance of a particular settlement, as offered by a defendant or its agent, and I refuse to accept the settlement, such refusal shall constitute sufficient grounds for the Firm to withdraw from representation and I agree to be indebted to the attorneys for any amount of fees and costs and expenses incurred based upon said offer as recommended. Should I employ another attorney and discharge the attorneys, I agree to pay to the attorneys an amount of attorney fees based upon the outstanding

Page 2 of 5

offer of settlement, if any, at the time of termination of the Firm. I further agree to reimburse the attorneys for all advanced costs immediately upon any termination of the attorneys' employment.

If at any time I am deemed to be incompetent (or if I am a minor) and if any court rules, statute or other law requires an amendment or novation of this Authority To Represent, then the fees shall be such as may be approved by court or as set forth by statute or rule of laws.

The attorneys have my authorization and consent to employ any other lawyer(s) as co-counsel, if, in the attorneys discretion, they deem such appointment to be beneficial to the case. I agree that the co-counsel will also have the right to represent me in the prosecution of my claims. However, the attorneys will have responsibility for paying the co-counsel out of the fees identified above.

It is understood that I have no other obligation to pay the co-counsel, but that any out-of-pocket expenses incurred by co-counsel shall be considered costs of litigation for which I am responsible. It is understood that the co-counsel will be available to me for consultation in this matter should I so desire.

I understand and agree that The Firm may contact me at any phone number (including mobile, cellular/wireless, or similar devices) or email address I provide at any time, for any lawful purpose. The ways in which The Firm may contact me include live operator, automatic telephone dialing systems (auto-dialer), prerecorded message, text messaging systems or email. Phone numbers and email addresses I provide include those I give to The Firm, those from which I contact The Firm or which we obtain through other means. I also understand and agree that The Firm may monitor/and or record any of my phone conversations with The Firm representatives.

I provide my consent for the Firm and its attorneys to publish the results of my case including, without  limitation, trial verdicts, arbitration awards, settlement amounts (without disclosing the names of the parties where confidential), and/or fee awards in advertisements and other media.

By executing this fee agreement I agree that, with one exception, any and all disputes between me and the Firm arising out of this Agreement, The Firm's relationship with me or The Firm's performance of any past, current or future legal services, whether those services are subject of this particular engagement letter or otherwise, will be resolved through a binding arbitration proceeding to be conducted under the auspices of the Commercial Arbitration Rules of the American Arbitration Association in Georgia. The disputes subject to binding arbitration will include without limitation, disputes regarding attorneys' fees, or costs and those alleging negligence, malpractice, breach of fiduciary duty, fraud or any claim based upon a statute. Both the agreement of the parties to arbitrate all disputes and the results and awards rendered through the arbitration will be final and binding on The Firm and me and may be specifically enforced by legal proceedings. Arbitration will be the sole means of resolving such disputes, and both parties waive their rights to resolve disputes by court proceedings or any other means. The parties have agreed that judgment may be entered on the award of any court of competent jurisdiction in the state of Georgia and, therefore, any award rendered shall be binding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. The one exception to my agreement to arbitrate concerns ethical grievances which I may have. Nothing in this agreement limits, in any way, my right to pursue any ethical grievance against The Firm as permitted by applicable law.

DocuSign Envelope ID: C2043254-B674-4976-A6FF-BAC0B3FA45E9

I understand that by agreeing to arbitration as a mechanism to resolve all potential controversies, disputes, or claims between us, I am waiving certain rights, including the right to bring an action in court, the right to a jury trial, the right to broad discovery, and the right to an appeal. I understand that in the context of arbitration, a case is decided by an arbitrator (one or more), not by a judge or a jury. I agree that, in the event of such controversy, dispute, or claim between us, the prevailing party will be entitled to recover from the losing party all costs and expenses he, she, or it incurs in bringing and prosecuting, or defending, the arbitration, including reasonable attorneys' fees and costs.

I have been advised to review this letter carefully to be certain that it accurately sets forth our agreement. In the event that I do not understand anything in this letter, I will let The Firm know so further written explanations can be provided.

**<u>NOTICE</u>: I am aware that this agreement contains provisions requiring arbitration of fee disputes.  I am aware that I should consult with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration, I give up (waive) my right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.**

The above employment is hereby accepted upon the terms and conditions stated herein.

DATED: ___1/18/2021_____

_Mark Gugliuzza_____          _____
CLIENT                                     MORGAN & MORGAN JACKSONVILLE, PLLC.

Page 4 of 5

## ASSOCIATING ATTORNEY AGREEMENT

I understand and consent to MORGAN & MORGAN JACKSONVILLE, PLLC, associating in this matter with _____, and that of the applicable fees in this agreement, ___% shall be paid to MORGAN & MORGAN JACKSONVILLE, PLLC, and ___% to the associating attorney.

I understand that in no event, however, shall I incur any additional legal fees or charges by virtue of said employment of co-counsel.  Co-counsel shall assume the same legal responsibilities to me for the performance of legal services as MORGAN & MORGAN JACKSONVILLE, PLLC, and will be available for consultation with me.

The above employment is hereby accepted upon the terms and conditions stated herein.

DATED: _1/18/2021_____

_Mark Gugliuzza_____

_____                    _____
CLIENT                                                              MORGAN & MORGAN JACKSONVILLE, PLLC.


                                                                      _____
                                                                      ASSOCIATING ATTORNEY

**MORGAN & MORGAN**

**Morgan & Morgan Jacksonville PLLC**

Gugliuzza, Mark vs. Jason Lyberger

11349048

<u>CLOSING STATEMENT</u>

| | | |
|---|---|---|
| **TOTAL RECOVERY:** | | $125,000.00 |
| | | |
| **LESS ATTORNEY'S FEES: %** | | |
| Morgan & Morgan Jacksonville PLLC | $10,000.00 | |
| | | |
| | **$10,000.00** | $115,000.00 |
| | | |
| **LESS COSTS:** | | |
| Medical Records | $1,472.47 | |
| Process Service | $4,314.60 | |
| Accident Report | $592.09 | |
| Expert - Retained Expert | $7,613.30 | |
| Courier | $88.27 | |
| Filing Fees | $819.28 | |
| Docufree Print | $5.10 | |
| Professional Service | $5,000.00 | |
| Postage & Shipping | $156.48 | |
| Docufree Postage | $20.28 | |
| Deposition | $851.80 | |
| Court Reporting Services | $4,394.15 | |
| Mediation Fee | $2,867.50 | |
| Life Care Plan | $5,000.00 | |
| Long Distance Telephone | $38.75 | |
| Print - Color | $26.00 | |
| Copy - Black and White | $40.50 | |
| Investigative Services | $9,037.50 | |
| Docufree Digital Imaging | $20.10 | |
| Trial - Presentation | $5,750.00 | |
| Police Reports | $5.00 | |
| Interest Expense | $7,410.06 | |
| | | |
| | **$55,523.23** | $59,476.77 |

**EXHIBIT**

**B**

**LIENS:**

| | | |
|---|---|---|
| Ortho Sport and Spine Physicians | $2,500.00 | |
| Dynamic Spine and Rehab, LLC | $3,500.00 | |
| Healthgram | $5,094.91 | |
| | **$11,094.91** | $48,381.86 |
| Less: Delayed Cost Deposit | $200.00 | $48,181.86 |
| **Settlement Proceeds Check: Mark Gugliuzza** | | **$48,181.86** |

The disbursement of this recovery as set forth above is hereby approved and a check, in the amount of $48,181.86, shall be forwarded approximately ten (10) business days after deposit of the executed draft.

It is understood and agreed that my attorneys have attempted to verify and pay any and all charges, costs and expenses and to the best of their knowledge and belief, this has been done.

It is further understood and agreed that my attorneys have retained the amount of $200.00, as reflected above, for a period of ninety (90) days following the disbursement of the INITIAL DISBURSEMENT TO CLIENT in anticipation of delayed expenses and charges. If there are no delayed expenses or charges received within the ninety (90) day period, the delayed cost deposit will be returned to the client.

It is understood and agreed that if there are any unpaid costs or charges which exceed the retained deposit or are discovered after the disbursement of the recovery, they will be the responsibility of the client.

It is further understood and agreed that any and all medical bills and/or liens not paid for at this time will be the responsibility of the client.

_____          _____
Date                                                          Mark Gugliuzza

12/18/2024                                                *Seth Diamond*
_____          _____
Date                                                          Seth Diamond, Esq.

**IN THE SUPERIOR COURT OF CHATHAM COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| MARK GUGLIUZZA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. _____ |
| v. | ) |
| | ) |
| MORGAN & MORGAN, | ) |
| JACKSONVILLE, PLLC d/b/a MORGAN | ) |
| & MORGAN, JACKSONVILLE, LLC | ) |
| and SETH DIAMOND, | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF KENNETH E. FUTCH

COMES NOW, KENNETH E. FUTCH, who after being duly sworn before an officer

authorized to administer oaths, states as follows:

1.

I am of legal age and otherwise competent to give this Affidavit. The facts stated in this

affidavit are to my personal knowledge and/or contains my expert opinions.

2.

I have a Bachelor of Business Administration from the University of Georgia in 1982. I

am a 1986 cum laude graduate of the University of Georgia law school. I have been a member in

good standing of the Georgia Bar and have continuously practiced law since that time.

3.

I submit this affidavit pursuant to O.C.G.A. § 9-11-9.1. I base my opinions on my

professional experience, Georgia statutory and case law, and the Georgia Rules of Professional

Conduct.



EXHIBIT

C

1

4.

In providing this affidavit, I have reviewed the following:

a.    Mark Gugliuzza's Representation Agreement with Morgan & Morgan (Ex. "A" to Complaint);

b.    Morgan & Morgan's expenses and Closing Statement in relation to its representation of Mark Gugliuzza (Ex. "B" to Complaint);

c.    The Proposed General Release and Settlement Agreement offered by Morgan & Morgan to Mark Gugliuzza (Ex. "1" attached hereto); and

d.    The United States District Court for the Southern District of Georgia's October 28, 2024 Order denying Plaintiff's Motion Interlocutory Review, Plaintiff's Motion to Dismiss Without Prejudice, and Defendants' Motion in Limine to File Amendment to Motion in Limine Out of Time dated October 28, 2024 (Ex. "D" to Complaint);

5.

From my review of this information, as part of the Representation Agreement, Morgan & Morgan stated it was permitted to, and it did, charge Marg Gugliuzza interest on the advanced expenses of litigation.  However, the Representation Agreement did not notify Mark Gugliuzza of the maximum interest rate that he would be charged, and the Closing Statement does not clearly identify what rate was charged to what it was applied.  These practices are in clear contradiction of Georgia Bar Rules and advisory opinions, specifically State Bar of Georgia Formal Advisory Opinion No. 05-5, issued in 2007.

6.

During the course of the representation, Morgan & Morgan suggested Mark Gugliuzza and his wife meet by telephone with a life care planner.  Morgan & Morgan did not explain what a life care planner was to Mark or his wife, but they chose to meet with the planner since their counsel suggested it.  Mark nor his wife were ever able to view the report.

7.

Morgan & Morgan failed to substantiate the life care plan with a proper physician, rendering the life care plan useless as evidence and inadmissible.

8.

In late 2024, Mark Gugliuzza was told he needed to settle his claim for $125,000.00, which was substantially less than he had ever been informed he should accept for the injuries he suffered in the wreck of January 17, 2021. Mr. Gugliuzza was informed this settlement was necessitated because a federal judge involved in his case had made a clear error in knocking his life care plan out and he could no longer introduce this plan. At no time did Morgan and Morgan admit it failed to have a medical doctor substantiate the life care plan which led to it being ruled inadmissible. Morgan & Morgan also failed to adequately disclose physicians intended testimony/report as to causation. Based upon this advice of Morgan and Morgan counsel Seth Diamond, Mr. Gugliuzza begrudgingly agreed to accept the $125,000.00 settlement.

9.

Mark Gugliuzza was presented with a Closing Statement and General Release proposed by Morgan & Morgan. Seemingly, Morgan & Morgan "reduced" its fee, but the expenses listed ending up totaling approximately what its original fee would have been. The expenses are inflated compared to normal market rates and are duplicative in nature, recouping, among other things:

 a. interest on expenses advanced;

 b. investigative services costs;

 c. "trial presentation"

 d. process service;

 e. the life care plan;

 f. "professional service"; and

 g. retained experts.

3

10.

Not only was Mark charged inexplicably high amounts for run-of-the-mill expenses, i.e. $4,314.60 for process service, but expenses for "professional service" and "trial presentation" amount to nothing more than duties undertaken by all attorneys in representing clients - for which they are compensated through the actual fee. This excessive, duplicative, and unclear list of expenses not only constitute ethical violations, but they fall below the standard of care attorney's in Georgia owe clients.

11.

Morgan & Morgan charging Mark Gugliuzza interest on advanced litigation expenses without properly identifying the maximum rate it would charge, not clearly identify what rate was charged to what it was applied to, failing to substantiate the proposed life care plan with a physician, and marking up expenses, duplicating costs and expenses, and not providing clarity as to the list of final expenses are breaches of the standard of care owed by attorney's to clients under Georgia law. As a result of these breaches, Mark Gugliuzza has sustained harm and damages, including not being fully compensated for his damages stemming from the car wreck giving rise to the underlying claims.

12.

This affidavit is given in order to comply with O.C.G.A. §9-11-9.1. It is not intended to encompass all of the opinions held by me. I reserve the right to modify and/or supplement my opinions upon consideration of additional information.

*FURTHER, AFFIANT SAYETH NAUGHT.*

This ___7th___ day of February, 2025.

4

Kenneth E. Futch

Sworn to and subscribed before me

this __7 th__ day of February, 20~~23~~. **25**



Notary Public

5

*Mark Gugliuzza - Release and Settlement Agreement*

STATE OF _____
COUNTY OF _____

## GENERAL RELEASE AND SETTLEMENT AGREEMENT

1.  **Nature of and Consideration for Agreement.**  In consideration of payment of One Hundred and Twenty-Five Thousand Dollars and Zero Cents ($125,000.00) tendered as outlined in Paragraph 3 below, sufficiency of which consideration is acknowledged by the undersigned, RELEASOR releases and forever discharges all RELEASEES from any consequence or liability caused by or arising from the Incident along with all resulting injuries and damages, and all causes of action set forth or which could have been set forth against RELEASEES or anyone else in any claim or suit.

2.  **Definitions.**  Where used anywhere in this General Release and Settlement Agreement:

    (a) "RELEASOR" means MARK GUGLIUZZA and his heirs, assigns, executors, administrators, and other representatives or agents now and in perpetuity.

    (b) "RELEASEES" means and includes Swift Transportation Co. of Arizona, LLC, Jason Lyberger, Red Rock Risk Retention Group, Inc., Aon Risk Services Southwest, Inc. and all of foregoing entities' officers, directors, agents, representatives, insurers, agents, employees, underwriters, assigns, members, general partners, limited partners, and employees, and any and all parent companies, subsidiaries, affiliates, successor companies, businesses, or entities thereof, any other affiliated persons or entities.

    (c) "Incident" means the event on or about January 17, 2021 in Chatham County, Georgia involving a collision between a motor vehicle occupied by MARK GUGLIUZZA and a motor vehicle operated by Jason Lyberger and as a result of which RELEASOR was allegedly injured and damaged.

    (d) "Agreement" and "Release" mean this General Release and Settlement Agreement consisting of 7 pages, including that for signature.

    (e) "Lawsuit" means the civil lawsuit styled *MARK GUGLIUZZA v. SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, AND JASON LYBERGER*, filed in the United States District Court for the Southern District of Georgia, Civil Action number 4:21-cv-00140-RSB-CLR.

3.  **Manner of payment of settlement proceeds**.  The settlement proceeds as identified in Paragraph 1 of this Agreement will be paid in the form of: one check for One Hundred and Twenty-Five Thousand Dollars and Zero Cents ($125,000.00) made payable to ***Morgan & Morgan Jacksonville Trust Account f/b/o MARK GUGLIUZZA***.  RELEASOR expressly accepts and acknowledges the sufficiency of these settlement proceeds in full and final



*Mark Gugliuzza - Release and Settlement Agreement*

settlement of all claims, actions, and causes of action arising out of the Incident, as set forth in greater detail below.

**4.   Release of claims.**   RELEASOR, having received and acknowledged the aforesaid consideration as compensation and satisfaction for and on account of all claims, actions, and causes of action against RELEASEES of every nature or character, known or unknown, arising from the Incident, hereby satisfies, settles, releases, and forever discharges RELEASEES from liability. Specifically included and released herein are all claims, actions, and causes of action of any nature or character arising out of the Incident and resulting injuries and damages to RELEASOR. RELEASOR acknowledges that this is a full satisfaction of all past, present, and future claims of RELEASOR, and any other person or entity for or on behalf of RELEASOR against RELEASEES arising out of the Incident, including all claims, demands, rights, and causes of action of whatever kind or nature arising from any known or unknown consequences, foreseen and unforeseen, for bodily and personal injuries, wrongful death, mental or physical pain and suffering, damage to property and consequences thereof, and injuries received and damages incurred due to negligent or intentional infliction of emotional distress, property damage, loss of use, rental car charges, deductibles, and the consequences thereof, and all claims and causes of action under any theory of recovery whether for compensation or punitive damages, all past, present, or future claims, rights, damages, costs, loss of services, loss of consortium, loss of earnings, lost wages, loss of enjoyment of life, diminished earning capacity, loss of pension or retirement plan or benefits, disfigurement, hospital, medical, drug, funeral, and physical therapy expenses, loss or diminution in past, present, or future Social Security earnings or payments, loss of or injury to insurability, claims for interest or attorney's fees, damages for alleged abusive litigation, and all other expenses and compensation of any nature, including but not limited to all claims and causes of action set forth or which could have been set forth against RELEASEES in any claim or suit.

**5.   Separate, distinct, or more serious consequences or damages.**   RELEASOR executes this Agreement with full knowledge and understanding that there may be more serious consequences or damages, or separate or distinct consequences or damages, resulting from the Incident that are not now known or appreciated by RELEASOR.  The check identified herein is accepted by RELEASOR as final payment of all consideration set out herein. This settlement represents the total and complete settlement of all claims of RELEASOR against RELEASEES arising out of the Incident, including but not limited to medical expenses incurred by RELEASOR or paid on their behalf and including any and all claims for property damage.

**6.   Lien affidavit pursuant to O.C.G.A. § 44-14-473.**   RELEASOR agrees and avers that he will resolve all outstanding valid liens applied to treatment, services or monies rendered or given as a result of the Incident and further that RELEASOR was a resident of **CHATHAM COUNTY, GEORGIA** at the time of the Incident.  It is the express intent of the undersigned that this sworn statement shall constitute the affidavit required under O.C.G.A. § 44-14-473. RELEASOR further warrants, agrees, and avers that there are no existing liens or claims against RELEASOR or the consideration referenced herein by any bankruptcy creditor or

*Mark Gugliuzza - Release and Settlement Agreement*

trustee, or that if such liens exist, they will be satisfied by RELEASOR.  However, nothing herein prevents RELEASOR from disputing or negotiating any such liens with lienholders.

**7.    Resolution of liens & indemnity by Releasor.**    By execution of this Agreement, RELEASOR acknowledges, agrees and stipulates that this General Release specifically includes, but is not limited to, any and all liens, subrogated interests and/or claims of any nature or kind whatsoever, including, but not limited to, governmental liens or interests, which, if any such claims, and/or interests exist, as a result of the matter in dispute, RELEASOR agrees to fully defend, satisfy, indemnify, and save and hold harmless RELEASEES, including payment of attorney's fees and costs incurred by RELEASEES in defense of such claims.

As a further consideration and inducement for this compromise settlement, RELEASOR agrees to satisfy any and all liens held by any hospital, clinic, medical professional, medical professional corporation or entity, doctor, health care provider, chiropractor, therapist, psychologist, psychiatrist, mental health care provider, caregiver, ERISA plan or any other federal, state, or local agency, including, but not limited to Medicare, Medicaid and the State of Georgia, CHAMPUS, ERISA, Workers Compensation, TRICARE, and furthermore agree to fully indemnify and hold RELEASEES harmless of and from any and all claims for payment of medical bills, medical liens, ERISA liens, letters of protection, deficiency orders, demands, attorney's liens requests for payments or other claims that may be asserted against RELEASOR by any hospital, clinic, medical professional, medical professional corporation or entity, doctor, health care provider, chiropractor, therapist, psychologist, psychiatrist, mental health care provider, caregiver, ERISA, or any other federal, state, or local agency, including, but not limited to, Medicare, Medicaid, and the State of Georgia for which RELEASOR may be held responsible as a result of, arising out of, or occurring from, any damage or injury allegedly sustained as a result of the Incident described in the Lawsuit. Nothing herein prevents RELEASOR from negotiating, disputing, or challenging any such lien as described above.

**8.    Medicare/Medicaid has no interest in settlement; waiver and indemnity for claims relating to subsequent decisions, findings, or suits.**

(a) The parties have sought to protect the interest of Medicare/Medicaid, and it is not the purpose of this Agreement to shift responsibility of medical care of MARK GUGLIUZZA to the Medicare program.  This settlement is intended to resolve a dispute between RELEASOR and RELEASEES as a result of the Incident, and RELEASOR agrees and represents that Medicare/Medicaid has not paid for any medical expenses arising from the Incident.  Nevertheless, the parties acknowledge and understand that any present or future action or decision by the Centers for Medicare and Medicaid Services (CMS), Medicare, or Medicaid on this settlement, or on eligibility for or entitlement to Medicaid/Medicare payments by MARK GUGLIUZZA will not void, modify, or affect the effectiveness or finality of this Agreement.

*Mark Gugliuzza - Release and Settlement Agreement*

**(b)** RELEASOR also understands that should CMS, Medicare, or Medicaid find that a Medicare/Medicaid Set-Aside Allocation should have been established in connection with the Incident and/or this settlement and/or otherwise determine that Medicare/Medicaid's interests were not adequately protected, CMS, Medicare, or Medicaid may require RELEASOR and/or MARK GUGLIUZZA to expend up to the entire settlement amount on Medicare/Medicaid covered expenses related to the injury before Medicare/Medicaid will provide coverage for the injury. The undersigned voluntarily accepts this risk and waives any and all claims of any nature and/or damages against RELEASEES should CMS, Medicare, or Medicaid take such action, including, but not limited to a Private Cause of Action against the RELEASEES under the Medicare Secondary Payer Act (MSP) pursuant to 42 USC § 1995y(b)(3)(A).

**(c)** Based on the foregoing, RELEASOR agrees to defend, indemnify, and hold harmless RELEASEES up to the amount of settlement from (i) any liability associated with CMS, Medicare, Medicaid, or MSPRC asserting a right to recover from the settlement, for conditional payments made on behalf of MARK GUGLIUZZA for any future injury-related care for which any entity proves the burden to pay shifted to Medicare or Medicaid or for any other reimbursement obligations arising under 42 U.S.C. § 1395y(b) and its associated regulations; (ii) any action by or on behalf of Medicare, CMS, or Medicaid seeking payment of past, current, or future medical expenses for or of MARK GUGLIUZZA in connection with the Incident; and (iii) any claims, expenses, and attorney's fees relating to either of the foregoing or to any expense covered or paid by CMS, Medicare, or Medicaid for treatment related to injuries of MARK GUGLIUZZA or claims of or on behalf of RELEASOR and/or MARK GUGLIUZZA against RELEASEES.

**(d)** Furthermore, the parties acknowledge and understand that any present or future action or decision by the Centers for Medicare and Medicaid Services (CMS), Medicare, or Medicaid on this settlement, or on the eligibility for or entitlement to Medicaid or Medicare payments by or on behalf of MARK GUGLIUZZA will not render this Agreement void or ineffective, or in any way affect the finality of this Agreement.

**9.  No representations or admission of liability/fault by Releasees.**  This Release is given voluntarily and not based on any representations or statements by RELEASEES as to merit, liability, or value of any claim or any other matter.  RELEASOR accepts the consideration referred to herein in full settlement of all claims against RELEASEES caused by or related to the Incident. RELEASOR further understands and acknowledges that payment of the amounts noted herein shall not be construed as an admission of liability or fault by RELEASEES. Instead, said payment is in compromise and settlement of the contested claims of RELEASOR.

**10.  Confidentiality**.  In consideration of one hundred dollars ($100.00) of the total consideration identified in paragraph 3 of this Release Agreement, RELEASOR covenants and agrees that the terms and conditions of this settlement, including the amount of

*Mark Gugliuzza - Release and Settlement Agreement*

consideration for settlement, the identities of RELEASEES and RELEASORS, any information discussed or communicated in negotiations leading up to this Agreement, and the history, background, and negotiations for this settlement and this Agreement will be kept confidential and private in all respects. The undersigned will not reveal the foregoing to newspapers, media, jury verdict reporter, settlement reporter, or any other person, firm, corporation or entity.  It shall not be a violation of this Confidentiality Paragraph to state "the matter has been settled." Nothing contained herein shall be construed to preclude the undersigned from disclosing the settlement to income tax preparer(s), financial advisor(s), or the Internal Revenue Service in connection with seeking tax or financial advice or filing any tax document requiring the disclosure of said settlement.

Further, nothing in this paragraph or in this Agreement is intended to or shall be construed to impede the right or the duty of the Parties to file taxes honestly, to report income honestly, to testify truthfully under oath, or to cooperate with any governmental body as required by law. Further, nothing contained herein shall be deemed a waiver of or otherwise reduce the protections afforded by privileged attorney-client communications between RELEASOR and his attorneys.

**11.  Scope of duty to indemnify.**  The indemnity provisions anywhere in this Agreement expressly are intended to include all reasonable attorney's fees, costs and expenses of litigation, and all monies spent in investigating or defending against claims, the making of compromises or settlements, or in satisfaction of judgments, as well as any monies expended to enforce the indemnity up to the amount of settlement.

**12.  Releasor not made whole.** RELEASOR agrees that while any valid liens for services rendered as a result of the Incident will be satisfied by him, RELEASOR has not been made whole. Furthermore, the subject of the Lawsuit is a contested matter on both the issues of liability and damages. This release and Agreement is the result of an effort in compromise to resolve all claims and avoid further litigation. RELEASOR agrees that payment of all sums recited herein is not intended to and does not fully or completely compensate RELEASOR for his claimed economic and non-economic losses and shall not be deemed to constitute full, complete or total compensation for the full amount of damages which have been claimed by RELEASOR or which might have been sought in litigation arising from the Incident.

**13. No presumption regarding drafting of Agreement.**  The undersigned has fully reviewed, with the opportunity to seek the advice and assistance of counsel, and had the opportunity to revise this Agreement prior to signing, and, as such, it is agreed that in the context of any subsequent interpretation of the Agreement, no presumption shall arise or apply pertaining to construction of the Agreement against the drafting party.

**14.  RELEASOR'S capacity, authority and ownership of claims released.**  RELEASOR warrants that he is over eighteen years of age, of sound mind, and laboring under no disabilities that would prevent him from understanding and agreeing to the terms of this Agreement. RELEASOR further warrants he is legally authorized to settle, compromise, resolve, and release the claims outlined and agreed herein. RELEASOR represents and

*Mark Gugliuzza - Release and Settlement Agreement*

warrants that no other person or entity has or has had any interest in the claims, demands, obligations and/or causes of action referred to in this Agreement except as otherwise set forth herein and that they have the sole right and exclusive authority to execute this Agreement, to resolve the claims released herein and to receive the sums specified herein.  RELEASOR expressly warrants and represents that neither he nor anyone on their behalf has assigned, pledged, or otherwise in any manner whatsoever sold or transferred by instrument in writing or otherwise, any right, title, interest or claim of or by RELEASOR by reason of the Incident described herein or any matters arising out of or relating thereto.

15.  **Bankruptcy.** RELEASOR avers and stipulates that as of the date of his execution of this Agreement, he is not a party to any Bankruptcy proceeding, he was not party to any such Bankruptcy proceeding at the time of the Incident, nor has he been party to any such proceeding in the intervening time.

16.  **Costs and Attorney's fees.** Except as otherwise expressly stated and provided for in this Agreement, RELEASOR and RELEASEES agree that each side will pay and bear their own costs and expenses, including attorney's fees, relating to this Lawsuit and matter.

17.  **Governing law.** RELEASOR agrees this Agreement is intended to be performed in the State of Georgia, and the substantive laws of Georgia shall govern the validity, construction, enforcement, and interpretation of this Agreement.

19.  **Construction and subheadings.** RELEASOR agrees the subheadings in this Agreement are for organizational purposes only and are not intended either to interpret any of the provisions or terms of this Agreement or to create any right or remedy.

20.  **Dismissal with prejudice.** In further consideration of the sums paid hereunder, RELEASOR authorizes and directs his attorneys to file a Consent Stipulation of Dismissal With Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) of all claims against all Defendants in the Lawsuit within 7 days after receipt of the settlement funds described above. RELEASOR agrees to execute all documents, including but not limited to motions and proposed orders, necessary to dispose of and dismiss the claims settled and released herein.

21.  **Entire Agreement; Severability; Cooperation**.  This is the entire and sole agreement between the parties regarding the subject matter referenced herein, and this Agreement replaces and supersedes all prior discussions, agreements, or understandings between the parties regarding the Incident, the Lawsuit, or any settlement or obligation regarding either. RELEASOR agrees and stipulates that should any provision of this Agreement be deemed illegal or unenforceable by any court of competent jurisdiction, the remaining provisions of this Agreement shall remain in full force and effect.  RELEASOR agrees to cooperate fully and execute any and all supplemental documents and to take all additional action which may be necessary or appropriate to give full force and effect to the terms of this Agreement.

Docusign Envelope ID: 5C62CD84-7362-4CF8-ACFE-E75B9BEDC2DF

*Mark Gugliuzza - Release and Settlement Agreement*

**PLEASE READ ALL TERMS CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

---

**I HAVE READ THE FOREGOING RELEASE AGREEMENT AND FULLY UNDERSTAND, ACCEPT, AND AGREE TO BE BOUND BY IT.**

IN WITNESS WHEREOF, I have hereunto set my hand and sealed, this _____ day

of _____, 2024.


Sworn to and subscribed before me,
this _____ day of _____, 2024.


_____              _____

Notary Public                                                    MARK GUGLIUZZA

## <u>LIMITED POWER OF ATTORNEY</u>

By affixing my signature below, I hereby appoint MORGAN & MORGAN as my agent with express authority to endorse my name to the check to be received in connection with the bodily injury settlement of my claim asserted against Jason Lyberger and Swift Transportation Co. of Arizona, LLC and to deposit the check into the Firm's escrow account.

_____
Mark Gugliuzza

Sworn to and subscribed before me this _____ day of _____, 2024.

_____
NOTARY PUBLIC
My Commission Expires:

**docusign**

## Certificate Of Completion

Envelope Id: 5C62CD24-7362-4CE9-ACF5-E75B0BFDC2DF                    Status: Delivered
Subject: You have new documents to sign from Morgan & Morgan
Source Envelope:
Document Pages: 10                        Signatures: 1              Envelope Originator:
Certificate Pages: 1                      Initials: 0                Marcelle Greer
AutoNav: Enabled                                                     20 North Orange Avenue
EnvelopeId Stamping: Enabled                                         Suite 1600
Time Zone: (UTC-05:00) Eastern Time (US & Canada)                    Orlando, FL  32801
                                                                     mgreer@forthepeople.com
                                                                     IP Address: 155.226.129.249

## Record Tracking

Status: Original                    Holder: Marcelle Greer          Location: DocuSign
         12/18/2024 1:33:32 PM               mgreer@forthepeople.com

| Signer Events | Signature | Timestamp |
| --- | --- | --- |
| Seth Diamond<br>sdiamond@forthepeople.com<br>Security Level: Email, Account Authentication (None) | *Seth Diamond*<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 136.226.59.13 | Sent: 12/18/2024 1:36:14 PM<br>Viewed: 12/18/2024 1:43:47 PM<br>Signed: 12/18/2024 1:43:53 PM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |
| Mark Gugliuzza<br>gugliuzzam@hotmail.com<br>Security Level: Email, Account Authentication (None) | | Sent: 12/18/2024 1:36:14 PM<br>Viewed: 12/18/2024 1:37:41 PM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 12/18/2024 1:36:14 PM |
| Certified Delivered | Security Checked | 12/18/2024 1:37:41 PM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MARK GUGLIUZZA,

       Plaintiff,

    v.

SWIFT TRANSPORTATION CO. OF
ARIZONA, LLC; and JASON LYBERGER,

       Defendants.

CIVIL ACTION NO.: 4:21-cv-140

## O R D E R

The Court **DENIES** Plaintiff's Motion for Interlocutory Review, (doc. 157), **DENIES** Plaintiff's Motion to Dismiss Without Prejudice, (doc. 158), and **DENIES** Defendants' Motion in Limine to File Amendment to Motion in Limine Out of Time, (doc. 162).

## BACKGROUND

This is a negligence case arising out of a January 17, 2021, vehicle collision between Defendant Jason Lyberger, who was driving a truck for his employer, Defendant Swift Transportation Co. of Arizona, LLC, and Plaintiff Mark Gugliuzza. Plaintiff sued Defendants on February 24, 2021, in the State Court of Chatham County. (Doc. 1-1.) Defendants filed their Answer in that court on March 29, 2021, (doc. 1-4), and removed the case to this Court on May 7, 2021, (docs. 1, 29).

The parties engaged in significant discovery, and the Court granted the parties' multiple discovery extension requests. The final order regarding expert disclosures, entered on June 16, 2022, provided a deadline of July 29, 2022, for Plaintiff to provide expert reports and August 30, 2022, for Defendants to provide expert reports. (Doc. 61.) The final discovery scheduling order,



**EXHIBIT**

**D**

entered on December 7, 2022, closed discovery on May 1, 2023, and stated that the Court would provide no further extensions.  (Doc. 74.)

The parties also engaged in considerable motions practice, and the Court granted in part and denied in part Defendants' Motion for Summary Judgment on March 11, 2024.  (Doc. 111.) On that same date, the Court entered its Order and Notice of Trial Preparation Requirements.  (Doc. 118.)  Following submissions by the parties and a scheduling conference with the Court, on May 22, 2024, the Court set this case for trial to begin on November 4, 2024.  (Doc. 127.)  The Court set several deadlines, including August 5, 2024, for the filing of motions in limine.  (Id.)

Defendants' Motion in Limine to Exclude Testimony and Evidence Regarding Future Medical Treatment for Mark Gugliuzza ("Motion to Exclude Future Medical Treatment") sought to exclude "any future medical testimony by Plaintiff Mark Gugliuzza or his expert Steven Barnett—a chiropractor—and in particular, any testimony that Mark Gugliuzza will or is likely to require spinal surgery in the future as result of the accident in question."  (Doc. 139, p. 1.)  Among several points in support of this overall argument, Defendants argued that, "while Plaintiff has disclosed two of his treating physicians (Dr. Linley [sic] and Dr. Arcure), they have not been properly disclosed to offer causation options [sic]."  (Id. at p. 7.)  Defendants asserted in a footnote that "Plaintiff's initial expert disclosure stated that Drs. Linley [sic] and Arcure might provide causation testimony, but Plaintiff never supplemented with such testimony, nor did Plaintiff provide the required Rule 26 report."  (Id. at p. 7 n. 1.)

In response to Defendants' motion, Plaintiff did not deny that he must present expert causation testimony to introduce evidence of his future medical treatment.  (Doc. 143.)  But Plaintiff argued that one of his treating physicians, Dr. James Lindley, was identified as a witness pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), and that Plaintiff "anticipates that Dr.

Lindley will testify that the treatment he administered for Plaintiff's lumbar spine following the collision, including the surgery that is currently being scheduled, is related to the subject collision." (Id. at p. 3.)  In reply, Defendants argued that Dr. Lindley cannot provide causation testimony because Plaintiff disclosed no such testimony.  (Doc. 144, pp. 1–2.)

At the pretrial conference on October 9, 2024, the Court heard oral argument from the parties on the motions in limine.  As to the Motion to Exclude Future Medical Treatment, the parties stood by the positions they took in their pleadings.  Plaintiff did not dispute that he needed expert testimony linking his future medical treatment to the collision in order to introduce evidence of his anticipated future medical needs and expenses.  But he contended that Dr. Lindley could provide that testimony.  Defendants continued to object that Plaintiff had not disclosed Dr. Lindley's causation testimony as required by Rule 26(a)(2)(C).  The Court agreed with Defendants and granted their motion.[1]  Before and after the pretrial conference, the parties filed several pleadings to prepare for trial including the proposed pretrial order, voir dire questions, requests to charge, and lists of exhibits and witnesses.

## DISCUSSION

Following the pretrial conference, Plaintiff filed a Motion for Interlocutory Review asking that he be allowed to appeal the Court's Order granting Defendants' Motion to Exclude Future Medical Treatment before trial and that this matter be stayed pending that review.  (Doc. 157.)  Plaintiff later asked the Court to dismiss this case without prejudice so that he could refile it after undergoing lumbar surgery.  (Doc. 158.)  Defendants moved to supplement their Motion to Exclude Future Medical Treatment to also seek exclusion of evidence of past medical expenses,

---

[1] Plaintiff's Motion for Interlocutory Review states that "the Court erred in excluding Dr. Lindley from testifying at trial." (Doc. 157-2, p. 3.)  Plaintiff misstates the Court's ruling.  The Court did not exclude Dr. Lindley from testifying.  It only prevented him from offering testimony about Plaintiff's future treatment including an opinion that the collision caused Plaintiff to need an anticipated surgery.

including epidural steroid objections, for lack of an expert opinion connecting that treatment to the

collision.  (Doc. 162.)  The Court addresses these motions in the order they were filed.

## I.      Plaintiff's Motion for Interlocutory Review

"Appellate review is generally postponed until after the entry of final judgment."  In re

Trasylol Prod. Liab. Litig. - MDL-1928, No. 08-MD-01928, 2010 WL 2541980, at *3 (S.D. Fla.

June 22, 2010).  But "[w]hen a district judge, in making in a civil action an order not otherwise

appealable under this section, shall be of the opinion that such order involves a controlling question

of law as to which there is substantial ground for difference of opinion and that an immediate

appeal from the order may materially advance the ultimate termination of the litigation, he shall

so state in writing in such order."  28 U.S.C. § 1292(b).  The Eleventh Circuit Court of Appeals

cautions against "too expansive use" of such appeals and warns that "[b]ecause permitting

piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad

policy."  McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir.  2004).

Plaintiff's Motion for Interlocutory Appeal does not recognize the rarity of Section 1292(b)

appeals or the criteria for taking such an appeal.  "There are four statutory criteria for the grant of

a petition for interlocutory appeal under 28 U.S.C. § 1292(b): (1) there must be a question of law;

(2) it must be controlling; (3) it must be contestable; and (4) its resolution must promise to speed

up the litigation.  Unless all criteria are satisfied, the district court may not certify its order for an

immediate appeal under § 1292(b)."  In re Trasylol Prod. Liab. Litig. - MDL-1928, 2010 WL

2541980, at *3 (citing Ahrenholz v. Bd. of Trustees of the Univ. of Ill., 219 F.3d 674, 675 (7th

Cir. 2000)) (internal citations omitted).  Plaintiff does not meet any of these criteria.

As to the first two criteria, courts in this Circuit have long "recognized a distinction

between a question of law, which will satisfy § 1292(b), and 'a question of fact or matter for the

discretion of the trial court.'"  McFarlin, 381 F.3d at 1258 (quoting Garner v. Wolfinbarger, 430 F.2d 1093, 1096–97 (5th Cir. 1970)).  "The term 'question of law' does not mean the application of settled law to fact.  It does not mean any question the decision of which requires rooting through the record in search of the facts or of genuine issues of fact."  Id. (citing Ahrenholz, 219 F.3d at 676) (internal citations omitted).  A proper Section 1292(b) application ordinarily asks "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine."  Id.

Plaintiff's proposed appeal poses no such question.  The parties do not dispute the law applicable to the Motion in Limine to Exclude Future Medical Expenses.  They agree that Plaintiff must present causation testimony to present evidence of future medical treatment.  Moreover, under the plain text of Rule 26, Plaintiff had to disclose "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C)(ii).  Where the parties disagree is the application of that settled law to the specifics of this case; that being, whether Plaintiff disclosed that Dr. Lindley would testify that the collision caused Plaintiff to need future medical treatments including surgery.  Resolution of that question would require the appellate court to "root[] through the record" to assess the sufficiency of Plaintiff's disclosures.  McFarlin, 381 F.3d at 1258.  Also, limiting medical evidence at trial for a Rule 26 violation is a classic "matter for the discretion of the trial court."  Id.  The Eleventh Circuit would only overturn that decision for an abuse of that discretion.  See Goncharenko v. Royal Caribbean Cruises, Ltd., 734 F. App'x 645, 647 n.1 (11th Cir. 2018) (regardless of whether Rule 26(a)(2)(B) or 26(a)(2)(C) applied, no abuse of discretion where district court struck expert witness for failure to comply with either disclosure standard); Romero v. Drummond Co., 552 F.3d 1303, 1323 (11th Cir. 2008) (no abuse of discretion in excluding testimony from witnesses whose reports merely recited general subject matter of expected testimony and did not provide "sufficient specificity to allow [the

opponent] to prepare for rebuttal or cross-examination"). Thus, courts have recognized that decisions akin to the Court's granting of Defendant's Motion to Exclude Future Medical Treatment do not present a question of controlling law for interlocutory review. See OFS Fitel, LLC v. Epstein, Becker & Green, P.C., 549 F.3d 1344, 1359 (11th Cir. 2008) (exclusion of expert for Rule 26 violation was "a discovery sanctions order where the chances of § 1292(b) review are slim"); Draper v. H. Roberts Fam., LLC, No. 1:06-CV-3057-CC, 2009 WL 10672367, at *1 (N.D. Ga. Mar. 30, 2009) ("This Court's discretionary decision to exclude the testimony of the [defendants'] experts [due to an insufficient disclosure] was based on the facts of this particular case, not a controlling question of law. As such, certification pursuant to 28 U.S.C. § 1292(b) would be wholly inappropriate.").[2]

As to the second Section 1292(b) criteria, even if Plaintiff asked a controlling question of law, this Court's answer is not legitimately contestable. "The threshold for establishing the 'substantial ground for difference of opinion' with respect to a 'controlling question of law' required for certification pursuant to § 1292(b) is a high one." Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp., 233 F. Supp. 2d 16, 19 (D.D.C. 2002). "A 'substantial ground for difference of opinion' means whether courts espouse different opinions as to the particular question of law, separate and apart from an application of the law to the facts." Grand Lodge of Pa. v. Peters, No. 8:07-CV-479-T-26EAJ, 2008 WL 2790237, at *1 (M.D. Fla. July 18, 2008).

---

[2] Plaintiff gives the appearance of a question of law by citing to the Eleventh Circuit's recent clarification, in Cedant v. United States, 75 F.4th 1314 (11th Cir. 2023), that Rule 26(a)(2)(C) and not Rule 26(a)(2)(B) governs treating physicians' disclosures. This is a red herring. The parties agree that Rule 26(a)(2)(C) applied to Plaintiff's disclosures of Dr. Lindley's opinions, and, consistent with Cedant, the Court applied that subsection when assessing the sufficiency of those disclosures. If anything, the Eleventh Circuit's decision in Cedant cuts against Plaintiff's request for interlocutory review as that opinion already eliminated any substantial ground for difference of opinion on the controlling question of law.

Plaintiff has cited no cases that "espouse different opinions on the law" from that espoused by the Court. This is unsurprising given that the Court based its ruling on the text of Rule 26(a)(2)(C). Plaintiff did not disclose a summary of any causation opinion from Dr. Lindley. (See doc. 143-4, pp. 3–4.) The closest Plaintiff came to doing so was his disclosure "that it is possible that the treating physicians may provide testimony concerning the causal relationship of Plaintiff's injuries to the subject collision." (Id. at p. 2.) This falls woefully short of complying with Rule 26(a)(2)(C)(ii). Defendants were left to guess not only who, if anyone, might provide a causation opinion but also what that opinion might be.[3] Small v. Amgen, Inc., No. 212CV476FTMPAMMRM, 2017 WL 5443912, at *4 (M.D. Fla. Feb. 15, 2017) (preventing five treating physicians from testifying because "purported summaries and vague references to medical records do not come close to satisfying the disclosure requirement imposed by Fed. R. Civ. P. 26(a)(2)(C)(ii)").

The Court's remedy for Plaintiff's failure is also not legitimately contestable. Courts regularly exclude opinion testimony that has not been timely or sufficiently disclosed. See, e.g., Rodriguez v. Walmart Stores E., L.P., No. 21-14300, 2022 WL 16757097, at *3 (11th Cir. Nov. 8, 2022) (affirming exclusion of treating physician's causation opinion where plaintiff did not make timely Rule 26(a)(2)(C) disclosure); Worley v. Carnival Corp., No. 21-23501, 2023 WL 3016914 (S.D. Fla. Apr. 20, 2023) (precluding treating physicians from testifying about causation,

---

[3] During oral argument, Plaintiff's counsel rhetorically asked what more he could have done to comply with Rule 26(a)(2)(C). He could have included in his original or supplemental expert disclosure the exact language that he included in his Response to the Motion in Limine, that being that he "anticipates that Dr. Lindley will testify that the treatment he administered for Plaintiff's lumbar spine following the collision, including the surgery that is currently being scheduled, is related to the subject collision." (Doc. 143, p. 3.) Had Plaintiff's counsel done so, Defendants' counsel would have known that they needed to depose Dr. Lindley or otherwise prepare to address his causation opinions through motions practice and at trial. Instead, Plaintiff's counsel notified Defendants, at most, that they should be prepared to somehow confront some unknown causation opinion from one of Plaintiff's many treating physicians. The rules of civil discovery exist to prevent just this sort of trial by ambush.

permanency of injuries, and the need/cost of future medical care because the physicians' Rule 26(a)(2)(C) disclosures "merely list[ed] the topics of possible opinions [the doctors] might render without disclosing the actual opinions or tethering them to the specific facts of the case"); Ables-Thomas v. MV Cont. Transp., Inc., No. 1:18-CV-03252-SDG, 2020 WL 10485727, at *3 (N.D. Ga. Dec. 21, 2020) (excluding causation testimony of treating physicians because plaintiff violated Rule 26(a)(2)(C)).

Nor could Plaintiff legitimately claim on appeal that his nondisclosure was substantially justified or harmless or that this Court should have issued a lesser sanction. Plaintiff did not make these arguments in response to Defendants' Motion to Exclude Future Medical Treatment, and, thus, he could not make them on appeal, interlocutory or otherwise. See, Larry v. City of Mobile, No. 22-11697, 2023 WL 4541020, at *2 (11th Cir. July 14, 2023) (refusing to consider argument not raised below that district court should have considered sanction short of exclusion for failure to make proper expert disclosure); Feldman v. Am. Dawn, Inc., 849 F.3d 1333, 1344 (11th Cir. 2017) ("We will not consider arguments raised for the first time on appeal.").

Moreover, even if Plaintiff had argued that his decision not to disclose Dr. Lindley's causation testimony was justified or harmless or that the Court could have imposed a lesser sanction, the Court's ruling still would not be legitimately contestable. This Court and others often assess five factors when sanctioning a disclosure violation: "'(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" Rangel v. Anderson, No. CV 215-81, 2016 WL 6542717 (S.D. Ga. Nov. 3, 2016) (quoting Cambridge Univ. Press v. Becker, No. 1:08-cv-1425-ODE, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)). As

8

in <u>Rangel</u>, the Court's analysis of these factors here weighs heavily for exclusion. Plaintiff's

belated attempt to expand his treating physician's anticipated testimony surprised Defendants, and

that surprise cannot be cured without causing unfair prejudice to Defendants and disrupting the

trial of this case. Prior to receiving Plaintiff's response to their motion in limine, Defendants had

no notice that Dr. Lindley would be offering causation testimony. As a result, they did not know

that they needed to depose Dr. Lindley to understand the specifics and basis of his opinions, retain

a rebuttal expert to confront his opinions, or move to attack the reliability of his opinions.[4] If the

Court allowed Dr. Lindley to testify about causation, the only way to avoid unfair prejudice would

be to reset the expert disclosures deadline that passed over two years ago, reopen expert discovery

and the period for dispositive and <u>Daubert</u> motions, and continue the trial. Particularly given that

the Court already granted multiple extensions and made clear in its last discovery order that it

would not allow any further delays, Plaintiff cannot credibly contend that the Court abused its

discretion by declining to take that path. <u>See</u> <u>Small</u>, 2017 WL 5443912, at *4 ("Plaintiffs'

apparent strategic election to disclose less than the bare minimum concerning each of the non-

retained treating physicians and to continue to insist on the adequacy of those disclosures while all

of the remaining expert-related deadlines expired cannot be rewarded or cured at this late stage

---

[4] Plaintiff's counsel has repeatedly blamed Defendants' counsel for not knowing about Dr. Lindley's opinions because Defendants did not depose him. Plaintiff's counsel misses the point. Defendants did not depose Dr. Lindley because Plaintiff did not notify Defendants that he would be offering causation testimony. <u>See</u>, <u>Bush v. Gulf Coast Elec. Co-op.</u>, No. 5:13-CV-369-RS-GRJ, 2015 WL 3422336, at *6 (N.D. Fla. May 27, 2015) (rejecting plaintiff's argument that its failure to disclose witness was harmless because defendant did not depose *other* witnesses who were disclosed, noting that this argument "misses the point" and adding that, "While there may be a myriad of reasons why Defendant's counsel has not deposed other non-party witnesses in this case, . . . Defendant was deprived of the opportunity of making that determination with regard to [the undisclosed witness]. With regard to [a disclosed witness], her testimony was disclosed in [plaintiff's] answers to interrogatories so that the Defendant knew what her knowledge was and could decide whether it needed to depose her. Plaintiff's failure to disclose the subject matter of [the undisclosed witness's] testimony, on the other hand, deprived Defendant of making that determination."). Additionally, even if Defendants had deposed Dr. Lindley, they likely would have steered clear of asking him questions about causation to avoid expanding his potential testimony beyond that covered by Plaintiff's expert disclosures.

without jeopardizing the [] deadline for filing dispositive motions and <u>Daubert</u> motions or the impending trial calendar.")  To be sure, Dr. Lindley's causation testimony is important to Plaintiff's case.  He cannot seek damages for future medical expenses without it.[5]  But, despite this importance, Plaintiff has not explained why his counsel did not disclose a summary of the facts and opinions to which Dr. Lindley is expected to testify.  Thus, the Court's chosen remedy for that failure is not legitimately contestable.

As to the final Section 1292(b) criteria, Plaintiff's proposed appeal does not "promise to speed up the litigation."  <u>Ahrenholz</u>, 219 F.3d at 675.  To the contrary, allowing Plaintiff to appeal a discretionary evidentiary ruling at this late stage would unfairly delay the forthcoming trial.

For all these reasons, the Court **DENIES** Plaintiff's Motion for Interlocutory Review. (Doc. 157.)

## II.     Plaintiff's Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 41(a)(2), after a defendant has filed an answer or motion for summary judgment, this Court has the discretion to grant a plaintiff's request to voluntarily dismiss his complaint.  In exercising such discretion, the Court must consider the interests of the defendants and whether the defendants will suffer "clear legal prejudice, *other than the mere prospect of a subsequent lawsuit*, as a result" of the voluntary dismissal.  <u>Pontenberg v. Boston Sci. Corp.</u>, 252 F.3d 1253, 1255 (11th Cir. 2001) (emphasis in original) (quoting <u>McCants v. Ford Motor Co.</u>, 781 F.2d 855, 857 (11th Cir. 1986)).  District courts "must 'weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such

---

[5] The Court sympathizes with Plaintiff on this point.  It appears the failure to disclose was Plaintiff's counsel's fault, not Plaintiff's.  At the same time, allowing Dr. Lindley to offer opinion testimony would inequitably and unfairly prejudice Defendants and frustrate the Court's orderly administration of justice.  And, as noted above, Plaintiff has misstated the breadth of the Court's ruling.  Dr. Lindley will be allowed to testify, and he is only precluded from giving causation testimony or testimony about Plaintiff's future medical treatment.

conditions to the dismissal as are deemed appropriate.'" Id. at 1256 (quoting McCants, 781 F.2d at 857).

Allowing Plaintiff to dismiss his case will unfairly prejudice Defendants, waste judicial resources, and frustrate the Court's efficient administration of justice. The collision giving rise to this lawsuit occurred nearly four years ago. If trial is delayed, witnesses' memories will only further fade. Additionally, in the more than three years that this case has been pending, the parties and the Court have expended great effort in preparing this case for trial to begin in about a week. Discovery has been completed, motions have been litigated, calendars have been cleared, jurors have been summoned, pretrial orders, jury instructions, voir dire proposals, and exhibits have been submitted, and a pretrial conference has been held. Also, Plaintiff admits that he seeks to dismiss this lawsuit so that he can refile a lawsuit that includes claims related to his future medical needs including his anticipated surgery. Thus, if the Court allows dismissal, Defendant would not suffer the mere prospect of a subsequent lawsuit but a lawsuit where Plaintiff would essentially get a "do over" from his counsel's mistakes. Dismissal would also be an end run around the Court's in limine holding and would encourage attorneys to disregard their Rule 26 and other discovery obligations. The Court cannot abide by that result.

For all these reasons, the Court **DENIES** Plaintiff's Motion to Dismiss. (Doc. 158.)

## III.    Defendants' Motion to File Amendment to Motion in Limine Out of Time

Defendants ask to expand the scope of their Motion to Exclude Future Medical Treatment to include a request to exclude past medical treatment. (Doc. 162.) Defendants do not explain why they did not seek to exclude this evidence within the August 5, 2024, Motions in Limine deadline which the Court set months ago. (Doc. 127.) Defendants contend that the Court's recent ruling on the Motion to Exclude Future Medical Treatment "directly impacts" the evidence they

seek to exclude in this belated motion. (Doc. 162, p. 2.) But the Court's ruling relied on the very principles and authorities Defendants raised in their timely filed motion. Defendants could have sought to exclude the evidence they now contest within the Court's deadline. Their attempt to do so at this late stage would prejudice Plaintiff, particularly considering that Plaintiff may contest, in contrast to his position on his future medical expenses, that he needs no expert causation opinion to recover for some or all of his past medical expenses. The Court has held Plaintiff to the Court's deadlines, and it will treat Defendants equally.

Thus, the Court **DENIES** Plaintiff's Motion to File Amendment to Motion in Limine. (Doc. 162.)

### CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Interlocutory Review, (doc. 157), Plaintiff's Motion to Dismiss Without Prejudice, (doc. 158), and Defendants' Motion in Limine to File Amendment to Motion in Limine Out of Time and Brief in Support, (doc. 162).

**SO ORDERED**, this 28th day of October, 2024.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 2/11/2025 3:54 PM
Reviewer: KW

**General Civil and Domestic Relations Case Filing Information Form**

☒ **Superior** or ☐ **State Court of** _Chatham_ _____ **County**

| For Clerk Use Only | |
|---|---|
| Date Filed _2/11/2025_____ | Case Number _SPCV25-00202-MI_____ |
| **MM-DD-YYYY** | |

**Plaintiff(s)**
Gugliuzza, Mark

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**
Morgan & Morgan Jacksonville, PLLC

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Diamond, Seth | | | | |

**Plaintiff's Attorney** _Brent J. Savage_____ **State Bar Number** _627450_ **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☐ **Contract**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☒ **Other General Civil**

**Domestic Relations Cases**
- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____    _____
**Case Number**                    **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

SPCV25-00202-MI

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 2/11/2025 3:54 PM
Reviewer: KW

## IN THE SUPERIOR COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| MARK GUGLIUZZA on behalf of Himself and all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | SPCV25-00202-MI |
| v. | ) ) | CIVIL ACTION NO. _____ |
| MORGAN & MORGAN, JACKSONVILLE, PLLC d/b/a MORGAN & MORGAN, JACKSONVILLE, LLC and SETH DIAMOND, | ) ) ) ) ) | |
| Defendants. | ) ) | |

### <u>CERTIFICATION UNDER RULE 3.2</u>

Pursuant to Rule 3.2 of the Georgia Uniform Court Rules, I hereby certify that this petition-pleading does not involve substantially the same parties, substantially the same subject matter, or substantially the same factual issues which would require the petition-pleading to be specifically assigned to the judge whom the original action was or is assigned.

This 10th day of February, 2025

*/s/ Mark A. Tate*
Mark A. Tate
Georgia Bar No. 698820

**Tate Law Group, LLC**
25 Bull Street, Suite 200
Savannah, GA 31401
912-234-3030
912-234-9700 (fax)
twells@tatelawgroup.com
mmcnally@tatelawgroup.com

*/s/ Brent J. Savage*
Brent J. Savage
Georgia Bar No. 627450

**SAVAGE, TURNER, PINCKNEY,**
**SAVAGE, & SPROUSE**
Post Office Box 10600
Savannah, Georgia 31412
(912) 231-1140
lhatcher@savagelawfirm.net

## IN THE SUPERIOR COURT OF CHATHAM COUNTY

## STATE OF GEORGIA

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 2/11/2025 3:54 PM
Reviewer: KW

MARK GUGLIUZZA, on behalf of
_____

Himself and all others similarly situated
_____

CIVIL ACTION
NUMBER _____

SPCV25-00202-MI

_____
                                    PLAINTIFF

VS.

MORGAN & MORGAN JACKSONVILLE, PLLC d/b/a
_____

MORGAN & MORGAN JACKSONVILLE, LLC and
_____

SETH DIAMOND
_____
                                    DEFENDANT

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:    MORGAN & MORGAN JACKSONVILLE, PLLC d/b/a MORGAN & MORGAN
JACKSONVILLE, LLC

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's
attorney whose name and address is:    Brent J. Savage, Esq.
                                        SAVAGE, TURNER, PINCKNEY, SAVAGE & SPROUSE
                                        102 E. Liberty Street, 8th Floor
                                        Savannah, GA 31401

an answer to the complaint which is herewith served upon you, within 30 days after service of summons upon you,
exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief de-
manded in the complaint.

This_____ day of _____, _____.
          11                      February      2025

                                        TAMMIE MOSLEY
                                        Clerk of Superior Court
                                        CHATHAM COUNTY

                                        By_____
                                                        Deputy Clerk

**Instructions:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.
SC-1 Rev 04

# IN CHATHAM SUPERIOR COURT

_____ TERM _____

_____

_____

_____

VS.

_____

_____

## ORIGINAL

Filed in the Clerk's Office this _____ 11

day of _____ February _____, 2025

_____

Clerk, Dep. Clerk, S.C.C.C. GA

_____

PLAINTIFF'S ATTORNEY

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 2/12/2025 10:37 AM
Reviewer: KW

**IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA**

| | | |
|---|---|---|
| MARK GUGLIUZZA on behalf of | ) | |
| Himself and all others similarly situated | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. SPCV25-00202-MI |
| v. | ) | |
| | ) | |
| MORGAN & MORGAN, | ) | |
| JACKSONVILLE, PLLC d/b/a MORGAN | ) | |
| & MORGAN, JACKSONVILLE, LLC | ) | |
| and SETH DIAMOND, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO DEFENDANTS**

COMES NOW, Plaintiff in the above-styled case, and requires Morgan & Morgan, Jacksonville, PLLC d/b/a Morgan & Morgan, Jacksonville, LLC AND Seth Diamond, pursuant to O.C.G.A. §9-11-34 to produce for inspection and copying at the offices of the Plaintiff's attorneys of record, Mark Tate, Tate Law Group, LLC, 25 Bull Street, Suite 200 Savannah, Georgia 31401 and Brent J. Savage, Savage, Turner, Pinckney, Savage, & Sprouse, 102 East Liberty Street, 8th Floor, Savannah, Georgia 31401, the following documents within forty-five (45) days of the date of service of this request.

Plaintiff requests that, along with the production of documents, a written response be made detailing the documents produced and any documents covered by these requests which the Defendant objects to producing.

**NOTE A:**      These requests are continuous and should be supplemented if additional information is received at a later date.

**NOTE B:**      If documents requested are not in the Defendants' possession, please state

-1-

as follows:

    (1)     name of person who has possession or knowledge of whereabouts;

    (2)     business address of such;

    (3)     business telephone number of such.

    **NOTE C:**     If you claim that a privilege applies to any document sought by this request, then state the factual and legal basis for the claimed privilege and identify the document (by date, author, recipient, general subject matter) so that it can be described in a motion to compel.

1.    Please produce a copy of your entire file, including but not limited to:

    a.     All pleadings and filings;

    b.     All correspondence between Mark Gugliuzza, or any entity or individual acting as on his behalf from March 2020 to present;

    c.     All correspondence between you and anyone related to the Plaintiffs' cases from March 2020 to present;

    d.     All internal communications relating to the representation of Mark Gugliuzza in all matter from March 2020 to present.

2.    Please produce all insurance policies relating to or referenced in Plaintiff's Complaint.

3.    Please produce any malpractice insurance policy which provides coverage for you.

4.    Please produce any and all documents relating to registering to transact business in the State of Georgia.

5.    Please produce any and all employment contracts and any contracts with independent contractors for the Morgan & Morgan Office located at 200 Stephenson Ave., Suite 200, Savannah, GA 31405.

Respectfully submitted this 10th day of February, 2025.

/s/ *Mark A. Tate*
Mark A. Tate
Georgia Bar No. 698820

**Tate Law Group, LLC**
25 Bull Street, Suite 200
Savannah, GA 31401
912-234-3030
912-234-9700 (fax)
twells@tatelawgroup.com
mmcnally@tatelawgroup.com

/s/ *Brent J. Savage*
Brent J. Savage
Georgia Bar No. 627450

**SAVAGE, TURNER, PINCKNEY,
SAVAGE, & SPROUSE**
Post Office Box 10600
Savannah, Georgia 31412
(912) 231-1140
lhatcher@savagelawfirm.net

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 2/12/2025 10:37 AM
Reviewer: KW

**IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA**

| | | |
|---|---|---|
| MARK GUGLIUZZA on behalf of | ) | |
| Himself and all others similarly situated | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. SPCV25-00202-MI |
| v. | ) | |
| | ) | |
| MORGAN & MORGAN, | ) | |
| JACKSONVILLE, PLLC d/b/a MORGAN | ) | |
| & MORGAN, JACKSONVILLE, LLC | ) | |
| and SETH DIAMOND, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANTS**

**COMES NOW**, Plaintiff in the above-styled action, and requires Morgan & Morgan

Jacksonville, PLLC d/b/a Morgan & Morgan, Jacksonville, LLC and Seth Diamond to answer

under oath and in writing the following interrogatories, pursuant to O.C.G.A. §9-11-33 within

forty-five(45) days from the date of service hereof.

**NOTE A**:      When used in these interrogatories, the phrases "Defendant",

"Defendants""individual in question", "you", or any synonym thereof are intended to and shall

embrace and include, in addition to either Defendant, Defendant's attorneys, agents, servants,

employees, representatives, private investigators, insurance adjusters, and all others who are in

possession of, in control of, or may have obtained information for or on behalf of Defendant.

**NOTE B**:      Throughout these interrogatories, wherever Defendants are requested to

identify a communication of any type and such communication was oral, the following

information should be furnished with regard to each such communication:

(a)      By whom it was made, and to whom;

(b)      The date upon which it was made;

(c)     Who else was present when it was made;

(d)     Whether it was recorded or described in any writing of any type and, if so,

identification of each such writing in the manner indicated in Note C below.

**NOTE C**:     Throughout these interrogatories, wherever Defendants are requested to

identify a communication, letter, document, memorandum, report, or record of any type and such

communication was written, the following information should be furnished:

(a)     A specific description of its nature (e.g., whether it is a letter, a memorandum,

etc.);

(b)     By whom it was made and to whom it was addressed;

(c)     The date upon which it was made; and

(d)     The name and address of the present custodian of the writing or, if not known, the

name and address of the present custodian of a copy thereof.

**NOTE D**:     Throughout these interrogatories, wherever Defendants are requested to

identify a person, the following information should be furnished:

(a)     The person's full name;

(b)     His or her present home and business address and telephone number at each

address;

(c)     His or her occupation; and

(d)     His or her place of employment.

**NOTE E**:     These interrogatories shall be deemed continuing to the extent required by

law.  You are required to (1) seasonably supplement any response directed to the identity and

location of persons having knowledge of discoverable matters as well as the identity of each

person expected to be called as an expert witness at trial, the subject matter on which he is

expected to testify and the substance of his/her testimony; (2) amend any prior response if you

subsequently learn that the original response was incorrect or if you learned that although correctly made, the original response is no longer true and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment; and (3) provide such other supplementary responses required by law.

1.    Please state the names, addresses, and telephone numbers of all witnesses known to you who say or who claim to have knowledge of the representation of Mark Gugliuzza.

2.    Please state the names, addresses, and telephone numbers of all persons who have given statements, whether written or oral to you, your attorney, your insurance carrier, or anyone else to your knowledge, covering the facts and circumstances of the incident that is the subject matter of this litigation, listing for each such statement, the date of the same, to whom the statement was given, and who is in possession of such statement.

3.    Please give your contentions of how the how the incidents complained of happened and the actions of all individuals involved.

4.    Describe in detail all laws, acts having the force and effect of law, codes, regulations and legal principles, standards, customs, and usages which you contend are applicable to this action.

5.    If you contend that some other person or legal entity is, in whole or in part, liable to the Plaintiff in this matter, state its full name, address, and telephone number and describe in detail the basis of such liability.

6.    If you contend that a Defendant is improperly named, please set forth the correct name.

7.    Set forth the names and addresses of all insurance companies which have insurance coverage relating to the all matters alleged in Plaintiff's Complaint, the number or numbers or such policies, the amount of coverage provided in each policy. And the name insured in the same, including umbrella policies.

8.    Please state the following in regard to every document which you contend is relevant in this case to Plaintiff's Complaint or any defense raised by a party:

    a.    The date, title, and a summary of the contents of said document;

    b.    The name and address if the author of the document; and

    c.    The name and address of the custodian of the document.

9.    Do you contend there are any admissions made by the Plaintiff or any other party or individual in this case?  If the answer is in the affirmative, and any purported admission was oral, please state the date the admission was made, and the witness to said admissions.  If the admission was made in writing, please state the title of the document, the name of the author of the document, a summary of the contents of the document, the date of the document's creation and/or execution, and the name, address, and telephone number of the custodian of the document.

10.    Identify all evidence, including but not limited to documents, physical evidence, and witnesses possessing knowledge of such evidence, which you contend supports your defenses as set forth in your Answer.

11.    Identify the full name, address, and telephone number of each expert whom you expect to call as an expert witness at the trial of this case and, as to each expert so identified, state the subject matter on which the expert is expected to testify and a summary of the grounds for each opinion.

12.    Identify all correspondence with Mark Gugliuzza, or any individual or entity acting on his behalf, relating to your representation of Mark Gugliuzza in all matters from January 2021 to present, including the contents of such correspondence.

13.    Identify all correspondence with any insurance company, and/or agent thereof, and any other party relating to the representation of Mark Gugliuzza in all matters from January

2021 to present, including the contents of such correspondence.

14.     Identify all facts and circumstances surrounding Morgan & Morgan, Jacksonville, LLC's registration to transact business in the State of Georgia.

15.     Identify any and all legal actions brought against Morgan & Morgan, Jacksonville, PLLC, Morgan & Morgan, Jacksonville, LLC, and Seth Diamond.

16.     Please state the names, addresses, email addresses, and telephone numbers of all persons who performed work on behalf Mark Gugliuzza in the underlying case stemming from the car wreck on January 17, 2021 with Jason Lyberger and the derivative action against Swift Transportation Co. of Arizona, LLC.

17.     For all persons named in your response to Interrogatory No. 16, identify in what capacity each individual worked and the scope of the work performed.

18.     Identify all cases and/or actions Morgan & Morgan. Jacksonville, PLLC has brought in its own name while operating in the State of Georgia arising out of its contacts with the State of Georgia.

Respectfully submitted this 10th day of February, 2025.

/s/ *Mark A. Tate*
Mark A. Tate
Georgia Bar No. 698820

**Tate Law Group, LLC**
25 Bull Street, Suite 200
Savannah, GA 31401
912-234-3030
912-234-9700 (fax)
twells@tatelawgroup.com
mmcnally@tatelawgroup.com

/s/ *Brent J. Savage*
Brent J. Savage
Georgia Bar No. 627450


**SAVAGE, TURNER, PINCKNEY,**
**SAVAGE, & SPROUSE**
Post Office Box 10600
Savannah, Georgia 31412
(912) 231-1140
lhatcher@savagelawfirm.net

Print Form

SHERIFF'S ENTRY OF SERVICE

Civil Action No. SPCV25-00202-MI

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 3/3/2025 2:52 PM
Reviewer: DH

Date Filed 2/11/2025 3:54PM

Attorney's Address

BRENT J. SAVAGE

102 E LIBERTY ST, 8TH FLOOR

SAVANNAH, GA 31401

Name and Address of Party to Served

MORGAN & MORGAN

900 OLD ROSWELL LAKES PARKWAY

SUITE 310, ROSWELL, GA 30076

Superior Court ☑    Magistrate Court ☐
State Court ☐    Probate Court ☐
Juvenile Court ☐

Georgia, CHATHAM _____ COUNTY

MARK GUGLIUZZA

_____
Plaintiff

VS.

MORGAN & MORGAN JACKSONVILLE,

PLLC, ET. AL
_____
Defendant

_____

_____
~~Garnishee~~

### SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS**
I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place abode in this County.

☐ Delivered same into hands of _____ described as follows:
age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
Served the defendant _Morgan and Morgan_ a corporation
by leaving a copy of the within action and summons with _Lisa (Assistant)_
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
☐ envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice
to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
Diligent search made and defendant _____
☐ not to be found in the jurisdiction of this Court.

This _26_ day of _Feb_ , 20 _25_

_N Lane 3358_

**DEPUTY**

**CLERK'S COPY**