# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

| | |
|---|---|
| MARK GUGLIUZZA, on behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>MORGAN & MORGAN, JACKSONVILLE PLLC d/b/a Morgan & Morgan Jacksonville, LLC, and SETH DIAMOND,<br><br>   Defendants. | CV 425-064 |

**ORDER**

Before the Court is Defendants' motion to compel arbitration, dkt. no. 5, as well as Plaintiff's motion to remand, dkt. no. 22. The motions have been fully briefed and are ripe for review. See Dkt. Nos. 5, 21, 22, 24, 25.

**BACKGROUND**

After being injured in a motor vehicle accident in Savannah, Georgia, on January 17, 2021, Plaintiff Mark Gugliuzza entered into a representation agreement with the law firm of Morgan & Morgan, Jacksonville PLLC ("Morgan & Morgan"). Dkt. No. 1-1 ¶¶ 7, 9; Id. at 17. The representation agreement contained an arbitration provision.

After Plaintiff retained the firm to represent him, Morgan & Morgan filed suit on Plaintiff's behalf and initially demanded

five million dollars in damages as a result of the motor vehicle accident. Dkt. No. 1-1 ¶ 10. The lawsuit remained pending for three years, during which two mediations took place. Id. ¶ 11. Morgan & Morgan's settlement offers remained in the millions of dollars. Id. While representing Plaintiff, Morgan & Morgan suggested Plaintiff meet with a "life care planner." Id. ¶ 12. Plaintiff was never advised to meet with a physician to substantiate any life care plan. Id. In late 2024, Morgan & Morgan told Plaintiff he needed to settle his claim for $125,000. Id. ¶ 13. Plaintiff alleges he "was informed this settlement was necessitated because a federal judge involved in his case had made a clear error in knocking his life care plan." Id. Plaintiff alleges that, in actuality, the court "disqualified" the life care plan because Morgan & Morgan "fail[ed] to have an appropriate physician review and validate the plan." Id. ¶ 16. Plaintiff alleges this failure was "clear malpractice" on Morgan & Morgan's part. Id. Further, Plaintiff alleges Morgan & Morgan "fail[ed] to adequately disclose medical experts, their opinions, and reports," which also "constitutes an actionable cause of action for legal malpractice." Id. ¶ 17. Ultimately, Plaintiff "begrudgingly agreed to accept the $125,000.00 settlement." Id. ¶ 14. Afterward, Plaintiff was presented with a settlement statement that, Plaintiff alleges, "improperly recouped to Morgan and Morgan numerous charges" that were either excessive or not properly recoverable by the law firm. Id. ¶ 15. Specifically,

Plaintiff asserts that Morgan & Morgan "failed to properly identify the maximum rate of interest they would charge in the representation agreements entered into with their clients, failed to identify what rate was actually charged and to which advances it was applied, inflated their costs and/or expenses in presenting closing statements to their clients, included duplicative charges and expenses in closing statements presented to their clients, and otherwise failed to clearly identify what was being charged to clients following the resolution of their cases." Id. ¶ 21.

Plaintiff filed this lawsuit, a putative class action, against Morgan & Morgan and his attorney, Seth Diamond, on March 20, 2025, in the Superior Court of Chatham County, Georgia. Id. at 3. Plaintiff brings claims against Morgan & Morgan and Mr. Diamond for professional negligence (Count I), breach of fiduciary duty (Count II), and "damages" (Count V).[1] Id. at 12-15.

Defendants removed the case to this Court, basing subject matter jurisdiction on the Class Action Fairness Act ("CAFA") and moved to compel arbitration based on the representation agreement's arbitration provision. Dkt. Nos. 1, 5. Thereafter, Plaintiff moved to remand this action to the state court from which it was removed. Dkt. No. 22.

---

[1] The complaint contains no Count III or Count IV. See Dkt. No. 1-1.

**DISCUSSION**

**I.  Plaintiff's Motion to Remand**

In his motion to remand, Plaintiff argues the Court must abstain from exercising jurisdiction over this case due to the local controversy exception contained in CAFA.  Dkt. No. 22.

**a. Legal Authority**

"'[P]laintiffs bear the burden of establishing that they fall within CAFA's local controversy exception.'"  Simring v. GreenSky, LLC, 29 F.4th 1262, 1267 (11th Cir. 2022) (quoting Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006)).  "That exception is a 'narrow one, with all doubts resolved "in favor of exercising jurisdiction over the case."'"  Id. (quoting Evans, 449 F.3d at 1163 (quoting S. Rep. No. 109-14 at 42, 2005 U.S.C.C.A.N. 3, 40)).

**b. Analysis**

**1. CAFA's Local Controversy Exception**

The local controversy exception provides:

A district court shall decline to exercise jurisdiction . . . .

  (i) over a class action in which—

    (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

    (II) at least 1 defendant is a defendant--

4

      (aa) from whom significant relief is sought by members of the plaintiff class;

      (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

      (cc) who is a citizen of the State in which the action was originally filed; and

    (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

  (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A). "Thus, the local controversy exception has four elements: (1) citizenship of the plaintiff class; (2) significant defendant; (3) principal injuries; and (4) similar class actions." McAteer v. DCH Reg'l Med. Ctr., No. 2:17cv859, 2018 WL 1089873, at *3 (N.D. Ala. Feb. 26, 2018).

  In their opposition brief to Plaintiff's motion to remand, Defendants argue, among other things, that "a related class action asserted against Morgan & Morgan . . . prevents [Plaintiff] from invoking the local controversy exception." Dkt. No. 25 at 11. In other words, Defendants argue Plaintiff has failed to meet the fourth element of the local controversy exception, § 1332(d)(4)(A)(ii).

5

### 2. The Other Class Action

Defendants argue Plaintiff's motion to remand should be denied based on Walker, "a substantially similar class action previously filed against Morgan & Morgan and one of its employees." Dkt. No. 25 at 11 (citing Walker v. Morgan & Morgan, Jacksonville PLLC, No. 2:24-cv-088, 2025 WL 310671 (S.D. Ga. Jan. 28, 2025)). Defendants assert Walker "was filed against Morgan & Morgan by the same attorneys that represent [Plaintiff] here and was premised on substantially similar allegations regarding professional negligence and alleged improper fees charged by Morgan & Morgan." Id. at 3.

A plaintiff can invoke the local controversy exception only if "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." § 1332(d)(4)(A)(ii). To qualify as an "other class action" for purposes of CAFA's local controversy exception, the matter need not share "common questions [of] law or fact" or contain "identical parties;" "'the action need only concern the "same or similar factual allegations against any of the defendants on behalf of the same or other persons."'" Knapp v. VGW Holdings Ltd., No. 6:24-CV-413-CEM-DCI, 2025 WL 452490, at *3 (M.D. Fla. Feb. 6, 2025) (quoting McAteer, 2018 WL 1089873, at *6 (quoting 28 U.S.C. § 1332(d)(4)(A)(ii))).

6

The Court finds that Walker prevents application of CAFA's local controversy exception in this case. In Walker,[2] the plaintiff retained Morgan & Morgan to represent him after he had been injured in a motor vehicle accident in McIntosh County, Georgia. His attorney at the firm was Brad Milkwick. The plaintiff alleged that Milkwick did not file a worker's compensation notice, which led to the plaintiff's group health insurance carrier paying the plaintiff's medical bills from the accident. The group health insurance carrier asserted a right for subrogation reimbursement of the claims paid, and Morgan & Morgan paid the reimbursement of $17,318.78 out of the $25,000.00 the plaintiff had received from the at-fault driver's insurance company. The plaintiff claimed Morgan & Morgan exposed him to hundreds of thousands of dollars in future medical bills. The plaintiff also asserted that Morgan & Morgan failed to explore other possible sources of compensation for his injuries. The plaintiff brought a putative class action against Morgan & Morgan and Mr. Milkwick in June 2024. The plaintiff claimed that, at the time he retained Morgan & Morgan to represent him, the firm was not qualified or registered to do business in Georgia, and, therefore, any collection of fees and expenses by the firm was wrongful and the representation agreement was unenforceable. The plaintiff brought claims of professional negligence, breach of

---

[2] The Court takes judicial notice of the complaint filed in this Court. Walker, No. 2:24-cv-088, dkt. no. 1-1.

7

fiduciary duty, disgorgement of fees, declaratory and injunctive relief, punitive damages, attorney's fees and costs of litigation.

At bottom, both this case and Walker involve a plaintiff who is dissatisfied with both Morgan & Morgan's legal representation and its collection of fees. First, both plaintiffs allege that Morgan & Morgan mishandled their personal injury cases. In this case, Plaintiff alleges Morgan & Morgan's failure to have a physician verify his life care plan potentially cost him millions of dollars he could have received in damages. See Dkt. No. 1-1 ¶¶ 11, 16; id. at 8, 14 (bringing claims for professional negligence and breach of fiduciary duty). In Walker, the plaintiff alleges Morgan & Morgan mishandled his worker's compensation claim by improperly billing his own health insurance carrier and failed to explore other possibilities for compensation for his injuries. See Walker, No. 2:24-cv-088, dkt. no. 1-1 ¶¶ 14-19; id. at 13, 14 (bringing claims for professional negligence and breach of fiduciary duty). Second, both plaintiffs allege that Morgan & Morgan received fees from its representation to which it was not entitled. Here, Plaintiff alleges Morgan & Morgan recouped fees that were excessive or not properly recoverable. Dkt. No. 1-1 ¶ 15. In Walker, the plaintiff specifically took issue with Morgan & Morgan "diminishing the recovery received by Plaintiff" by imposing a forty-percent contingency fee of any recovery. See Walker, No. 2:24-cv-088, dkt. no. 1-1 ¶ 48. The plaintiff also challenged the representation agreement's terms that allowed

Morgan & Morgan to withdraw its employment if the plaintiff rejected a settlement offer the firm recommended and to receive a fee based on the rejected settlement offer. See id., dkt. no. 19 at 4.

Notably, Plaintiff does not respond to Defendants' assertion that Walker bars application of CAFA's local controversy exception. Indeed, Plaintiff does not mention Walker at all. The only thing Plaintiff says on the subject of another class action is that "after a diligent search for similar lawsuits against these Defendants alleging the inflation of or creation of excessive fees, or either of them individually, no such cases were found." Dkt. No. 22 at 5. Plaintiff misses the mark. Again, the matter need not share "common questions [of] law or fact" or contain "identical parties." Knapp, 2025 WL 452490, at *3. Importantly, "plaintiffs bear the burden of establishing that they fall within CAFA's local controversy exception," and "[t]hat exception is a narrow one, with all doubts resolved in favor of exercising jurisdiction over the case." Simring, 29 F.4th at 1267 (citations and quotation marks omitted). Due to the similarities between this case and Walker, the Court finds Plaintiff has not met his burden of establishing that this case falls within CAFA's local controversy exception. Therefore, Plaintiff's motion to remand, dkt. no. 22, is **DENIED**.

**II. Defendants' Motion to Compel Arbitration**

Defendants contend Plaintiff's claims are subject to mandatory arbitration, per the parties' agreement, and have moved to compel arbitration and to dismiss or stay this case. Dkt. No. 5.

**a. Background**

Defendants note that Plaintiff and Morgan & Morgan entered into a representation agreement wherein Plaintiff "agreed to arbitrate 'any and all disputes' arising out of or relating to his relationship with Defendants." Id. at 1. The representation agreement, titled "Authority to Represent" (the "Agreement"), contains the following arbitration clause:

> By executing this fee agreement I agree that, with one exception, any and all disputes between me and the Firm arising out of this Agreement, The Firm's relationship with me or The Firm's performance of any past, current or future legal services, whether those services are subject of this particular engagement letter or otherwise, will be resolved through a binding arbitration proceeding to be conducted under the auspices of the Commercial Arbitration Rules of the American Arbitration Association in Georgia. The disputes subject to binding arbitration will include without limitation, disputes regarding attorneys' fees, or costs and those alleging negligence, malpractice, breach of fiduciary duty, fraud or any claim based upon a statute. Both the agreement of the parties to arbitrate all disputes and the results and awards rendered through the arbitration will be final and binding on The Firm and me and may be specifically enforced by legal proceedings. Arbitration will be the sole means of resolving such disputes, and both parties waive their rights to resolve disputes by court proceedings or any other means. The parties have agreed that judgment may be entered on the award of any court of competent jurisdiction in the state of Georgia and, therefore, any award rendered shall be binding. The

arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. The one exception to my agreement to arbitrate concerns ethical grievances which I may have. Nothing in this agreement limits, in any way, my right to pursue any ethical grievance against The Firm as permitted by applicable law.

I understand that by agreeing to arbitration as a mechanism to resolve all potential controversies, disputes, or claims between us, I am waiving certain rights, including the right to bring an action in court, the right to a jury trial, the right to broad discovery, and the right to an appeal. I understand that in the context of arbitration, a case is decided by an arbitrator (one or more), not by a judge or a jury. I agree that, in the event of such controversy, dispute, or claim between us, the prevailing party will be entitled to recover from the losing party all costs and expenses he, she, or it incurs in bringing and prosecuting, or defending, the arbitration, including reasonable attorneys' fees and costs.

I have been advised to review this letter carefully to be certain that it accurately sets forth our agreement. In the event that I do not understand anything in this letter, I will let The Firm know so further written explanations can be provided.

**NOTICE: I am aware that this agreement contains provisions requiring arbitration of fee disputes. I am aware that I should consult with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration, I give up (waive) my right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.**

Dkt. No. 5-1 at 6-7. Plaintiff electronically signed the Agreement via DocuSign on January 18, 2021. Id. at 7. Defendants argue "[e]ach of the claims in [Plaintiff's] Complaint are covered by the specific language in [Plaintiff's] arbitration agreement in

the Representation Agreement." Dkt. No. 5 at 6. Plaintiff responds that the Agreement is unenforceable. Dkt. No. 21 at 6.

### b. Legal Authority

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "embodies a liberal federal policy favoring arbitration agreements." Mason v. Midland Funding LLC, 815 F. App'x 320, 323 (11th Cir. 2020) (quoting Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005)). "The FAA creates a 'presumption of arbitrability,' and under it, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Id. (quoting Dasher v. RBC Bank (USA), 745 F.3d 1111, 1115 (11th Cir. 2014)). "The FAA reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010). Courts are therefore required to enforce arbitration agreements "according to their terms." Id. at 67. "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Id. (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S 681, 687 (1996)). The party resisting arbitration ultimately bears the burden of showing that the arbitration provision in question should not be enforced. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91–92 (2000).

### c. Analysis

Defendants argue the FAA compels arbitration of Plaintiff's claims. See generally Dkt. No. 5. In response, Plaintiff argues

that Georgia law, not the FAA, applies to the parties' Agreement and prohibits arbitration of Plaintiff's claims due to the parties' failure to initial the arbitration provision. Dkt. No. 21 at 3, 6, 9 (citing O.C.G.A. § 9-9-2(c)(9) and Ga. R. & Regs. St. Bar 1.5).[3]

### 1. FAA Applicability

Plaintiff's first argument against arbitration is multi-layered. He argues that the parties' Agreement should be interpreted under Georgia law, not the FAA, because the Agreement does not involve interstate commerce. Dkt. No. 21 at 3. From there, Plaintiff argues that Georgia law prohibits enforcement of the arbitration provision. Id. at 6. Plaintiff contends, under Georgia law, arbitration agreements are not enforceable if contained in a contract relating to the terms and conditions of employment *unless* the arbitration provision is initialed by all signatories to the contract. Id.

The first question for the Court is whether the FAA or Georgia law governs the Agreement's arbitration provision. The FAA provides that "[a] written provision in . . . a contract evidencing *a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such

---

[3] Notably, Plaintiff does not dispute that his claims fall within the scope of the arbitration provision. See generally Dkt. No. 21.

13

grounds as exist at law or in equity for the revocation of any contract or as otherwise provided [herein]." 9 U.S.C. § 2 (emphasis added). The Supreme Court has concluded "that the word 'involving' is broad and is indeed the functional equivalent of 'affecting.'" Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 274 (1995). Further, the Supreme Court held the FAA's "legislative history . . . indicates an expansive congressional intent." Id. That is, "[a] broad interpretation" of "involving commerce" "is consistent with the [FAA's] basic purpose, to put arbitration provisions on 'the same footing' as a contract's other terms." Id. at 275 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)).

Plaintiff contends the parties' agreement "does not encroach upon interstate commerce." Dkt. No. 21 at 3. Plaintiff notes that his underlying lawsuit was filed in a Georgia court, he is a Georgia resident, Defendant Diamond is within Georgia, the Morgan & Morgan office at which Plaintiff entered into the Agreement was in Georgia, and Plaintiff did not communicate with anyone outside of Georgia during the case. Id. at 5. Plaintiff argues that Morgan & Morgan's Florida citizenship, alone, is insufficient to establish that the Agreement involved interstate commerce. Id. at 4. Finally, Plaintiff argues "the parties clearly intended to be bound by Georgia law." Id. at 6. Plaintiff's arguments are without merit.

Plaintiff's argument that Morgan & Morgan's Florida citizenship, alone, in insufficient to constitute interstate commerce is misleading. Indeed, other factors evidence the Agreement is a transaction involving commerce. To begin, the Agreement provides that Morgan & Morgan, in Florida, would charge and collect fees for legal services rendered in Georgia. Dkt. No. 1-1 at 17-21. Further, Plaintiff electronically signed the Agreement, dkt. no. 5-1 at 7, and later the "General Release and Settlement Agreement," dkt. no. 1-1 at 29, through the Internet via the software DocuSign, id. at 37. The Release itself originated in Morgan & Morgan's Orlando, Florida, office. Id. These things show that the parties' transaction, as evidenced by the Agreement, "turn[ed] out, *in fact*, to have involved interstate commerce." Allied-Bruce, 513 U.S. at 277-78; accord In re Touchstone Home Health LLC, 572 B.R. 255, 268 (D. Colo. 2017) (suggesting attorney-client engagement agreements "may satisfy the interstate commerce requirement of the FAA if . . . [t]he client engaged a law firm located in a different state than the client" or "[t]he law firm or the client has offices in multiple states"). Because the Agreement involves interstate commerce, the FAA, not Georgia law, applies to the validity, enforceability and scope of the arbitration provision. See Olsher Metals Corp. v. Olsher, No. 03-12184, 2004 WL 5394012, at *1 (11th Cir. Jan. 26, 2004) (per curiam).

As for Plaintiff's argument that the parties intended the Agreement to be governed by Georgia law, "Eleventh Circuit caselaw is clear: arbitration clauses are governed by the FAA unless the parties 'clearly and unmistakably' provide otherwise." Grandis v. BGIS Glob. Integrated Sols. US LCC, 643 F. Supp. 3d 1340, 1344–45 (S.D. Fla. 2022) (citing Gulfstream Aerospace Corp. v. Oceltip Aviation 1 Pty Ltd., 31 F.4th 1323, 1325 (11th Cir. 2022) ("Long story, short: if you want certain rules to apply to the handling of your arbitration, the contract must say so clearly and unmistakably. Otherwise, the [FAA] will apply.")). "The presumption of the FAA's applicability is so strong that even when a contract contains a choice of law provision, the FAA still governs that contract's arbitration clause." Id. (citing Gulfstream Aerospace Corp., 31 F.4th at 1328-29 (holding that the FAA applied to an arbitration agreement notwithstanding a Georgia choice-of-law provision in a section of the agreement labeled "Arbitration"); Olsher Metals Corp., 2004 WL 5394012, at *1 (holding that the FAA, not the chosen law in a choice of law provision, applies to the validity, enforceability, and scope of arbitration clauses)). Thus, although the Agreement references Georgia law numerous times, the FAA governs the Agreement's arbitration clause. See Gulfstream Aerospace Corp., 31 F.4th at 1325; Olsher Metals Corp., 2004 WL 5394012, at *2.

16

### 2. FAA Preemption

In opposing arbitration, Plaintiff argues that, "[u]nder Georgia law, arbitration agreements are not enforceable as to '[a]ny contract relating to terms and conditions of employment unless the clause agreeing to arbitrate is initialed by all signatories at the time of the execution of the agreement.'" Dkt. No. 21 at 6 (quoting O.C.G.A. § 9-9-2(c)(9)). Plaintiff contends the parties' Agreement is, on its face, an employment agreement which requires an arbitration provision to be separately initialed by the signatories to be enforceable. Id. at 6-9.

As explained above, however, the FAA, not Georgia law, governs the Agreement's arbitration provision. This Court has previously held that when an agreement to arbitrate is governed by the FAA, "the fact that Plaintiffs did not initial the provision is of no importance." Sims v. Select Portfolio Serving, Inc., No. 108-064, 2008 WL 11349693, at *4 (S.D. Ga. Sept. 23, 2008) (referencing O.C.G.A. § 9-9-2(c)(8)). The FAA places no initialing requirement on parties to an arbitration agreement. Id. "In fact, the Eleventh Circuit has made clear that while the FAA requires than an arbitration agreement be in writing, it does not require that it be signed or initialed by the parties." Id. (citing Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005) (noting that the court "readily concludes that no signature is needed to satisfy the FAA's written requirement")).

17

"Moreover, the Georgia Court of Appeals has expressly held that the Georgia Arbitration Code's initial requirement is preempted by the FAA." Id. (citing Langfitt v. Jackson, 644 S.E.2d 460, 465 (Ga. Ct. App. 2007)). "In that case, the plaintiffs also contended that their arbitration agreement was not enforceable under Georgia law because they did not initial the arbitration provision." Id. "The court held that the arbitration agreement, which was governed by the FAA, was not made unenforceable by the absence of the homeowner's initials on the arbitration provisions." Id. "Specifically, the court explained that the FAA preempts state law that conflicts with its provisions." Id. Thus, Plaintiff's failure to initial the Agreement's arbitration provision does not render it unenforceable.[4]

In conclusion, the Court finds that Plaintiff, as the "party resisting arbitration," has not met his "burden of showing that the arbitration provision in question should not be enforced." Green Tree Fin. Corp.-Ala., 531 U.S. at 91–92. Therefore, Defendants' motion to compel arbitration, dkt. no. 5, is **GRANTED**.

## CONCLUSION

Plaintiff has failed to meet his burden of establishing that this case falls within CAFA's local controversy exception. Accordingly, Plaintiff's motion to remand this case to state court

---

[4] This analysis is equally applicable to Plaintiff's argument that the Georgia State Bar requires an arbitration provision in an attorney-client agreement to be separately initialed. Dkt. No. 21 at 9 (citing Ga. R. & Regs. St. Bar 1.5).

18

based on the local controversy exception, dkt. no. 22, is **DENIED**. Further, the Court finds the Agreement's arbitration provision is enforceable pursuant to the FAA. Therefore, Defendants' motion to compel arbitration, dkt. no. 5, is **GRANTED** in that Plaintiff's claims shall be submitted to arbitration and this case **ADMINISTRATIVELY STAYED** pursuant to 9 U.S.C. § 3 pending the completion of the alternative dispute resolution process.

**SO ORDERED**, this 11th day of August, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA